ORIGINAL

FILED
NOV 13 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SEYMOUR and JAY WINUK, as Co-Administrators to the ESTATE OF GLENN WINUK, Deceased,

No. 06-770 C

v.

THE UNITED STATES OF AMERICA

**COMPLAINT**

Seymour and Jay Winuk, as co-administrators to the Estate of Glenn Winuk, deceased, by and through their attorneys, Kreindler & Kreindler LLP, allege the following against the United States:

**JURISDICTION**

1. Jurisdiction exists pursuant to the Tucker Act, 28 U.S.C. § 1491, to enforce a Congressional Act, to wit to reverse action taken by the United States Department of Justice in its denial of benefits and recognition of service, pursuant to the Public Safety Officers' Benefits Act, 42 U.S.C. § 3796, ("PSOBA" or "Act"), its implementing regulations, 28 C.F.R. 32 and its supplement Public Law 107-37(1) and (2) regarding Expedited Payment for Heroic Public Safety Officers killed or seriously injured during the September 11, 2001 terrorist attacks.

2. Petitioners have exhausted their administrative remedies by virtue of a final determination by Domingo S. Herraiz, Director of Justice Assistance on September 1, 2006, denying the recognition and benefits in this matter and overruling the Hearing Officer, Daniel Skoler, appointed by the Justice Department and who presided over a hearing and first appeal and who found in favor of petitioners in a written decision rendered September 10, 2005.

3. Petitioners are Seymour Winuk, the father of Glenn Winuk, deceased and Jay Winuk, the decedent's brother, and were appointed co-administrators by the Surrogate's Court in New York County, New York, on November 21, 2001. Petitioners and the decedent, at all relevant times, were domiciled in the State of New York.

## FACTUAL BACKGROUND

4. Glenn Winuk served as a volunteer firefighter and EMT for the Jericho Fire Department in Nassau County, New York for over 19 years.

5. On September 11, 2001 Glenn Winuk was working as a law partner at the law firm of Holland & Knight, LLP approximately one block from the World Trade Center. Shortly after the Towers were struck by hijacked aircraft and after assisting in the evacuation of occupants and personnel in his office building, he ran towards the World Trade Center donning EMS equipment.

6. On September 11, 2001, Glenn Winuk was a member of the Jericho Fire Department. He presented his credentials to FDNY fire officers at the World Trade Center emergency scene and offered his assistance. The FDNY welcomed his assistance and allowed him into a secure area of the South Tower; Tower 2, that was being evacuated but had injured building occupants and personnel who required first aid.

7. Tower 2, which had been struck by a jet aircraft at approximately 9:03 a.m., collapsed at approximately 9:59 a.m.

8. On or about March 20, 2002, the body of Glenn Winuk was unearthed from the wreckage of what had been the lobby area of Tower 2. He was found with a first response paramedic bag and latex gloves on his hands and stethoscope around his neck alongside the

remains of other FDNY and NYPD rescue workers.

9. New York General Municipal Law Section 209-I authorizes firefighters and rescue workers to present credentials to fire officers outside their district and offer assistance. Glenn Winuk had, on several prior occasions, done just that: 1993 World Trade Center bombing; a 1994 New York City subway bombing and fire; the 1990 Avianca plane crash, Cove Neck, New York and Suffolk County wild fire operations.

10. On March 31, 2002, John E. Lottes, Chief of the Jericho Fire Department, wrote a letter stating that Glenn Winuk "should be recognized by all as having been lost in the line of duty while acting as a rescuer representing the Jericho Fire Department."

11. On May 1, 2002 Chief Lottes wrote that Glenn "was acting as a bonafide agent of the Jericho Fire Department, acting directly on its behalf, while assisting FDNY with rescue and emergency scene operations."

12. On May 24, 2003, the National EMS Memorial Service publicly honored Winuk as a line of duty death.

13. In December 2003, Winuk's parents submitted a claim to the BJA seeking Federal recognition and benefits for their son's line of duty death, pursuant to the PSOB Act, 42 U.S.C. § 3796(a) and/or Public Law 107-37.

14. Petitioners provided the BJA with the above described letters from Chief Lottes and the Chairman of the Jericho Fire District Board of Fire Commissioners provided the BJA with government forms that confirmed Mr. Winuk was a member of the Jericho Fire Department.

15. In July 2004, the BJA denied Mr. Winuk's claim, which is identified as PSOB case No. 01-911-0421. The BJA determined that the letters by Chief Lottes did not constitute

"certification" that Mr. Winuk was a public safety officer killed in the line of duty and that Mr. Winuk was a mere "associate member" of the Jericho Fire Department on the date of his death. His previous status for over 19 years had been "active" firefighter. Winuk voluntarily asked to change his status a few years before his death because he was then living in Manhattan and commuting to Jericho to fulfill his duties as an active firefighter, which included training, meetings and other monthly and annual requirements. The change in his status reduced his requirements to attend these regular meetings and training sessions that he had participated in for almost 20 years. The BJA concluded that because the Jericho Fire Department by-laws presumably barred associate members from performing a "firematic" activity, he was not authorized to respond. Appeal was taken and the BJA appointed hearing officer Daniel Skoler to review the case in September 2004. Petitioners were not represented by any lawyer until early 2005, when the undersigned counsel was asked to represent the Winuks, which counsel is doing pro bono.

16. Additional documents were filed with Hearing Officer Skoler, including an April 7, 2005 letter from Chairman of the Jericho Board of Fire Commissioners, Robert Biancanello formally "certifying" that Mr. Winuk was a member of the Jericho Fire Department killed in the line of duty on September 11, 2001. Mr. Biancanello also cited the specific amendment to the PSOBA, Public Law 107-37, designed to accelerate the payment of benefits following certification for victims of the 9/11 terror attacks.

17. A hearing was held April 14, 2005 in New York City. Testimony was presented by Seymour and Jay Winuk, John Naveretta, formerly a firefighter and deputy chief with the Jericho Fire Department and firefighter with the FDNY, and Thomas Von Essen, the Fire

Commissioner for the FDNY on September 11, 2001. Hearing Officer Skoler asked questions of all witnesses and counsel at the hearing. In the weeks and months following the hearing, Hearing Officer Skoler asked for and received additional documents, information and explanation. On September 10, 2005 Mr. Skoler issued an 11 page opinion concluding that Mr. Winuk was entitled to the PSOBA recognition and benefits.

18. Mr. Skoler concluded that Mr. Winuk was indeed a public safety officer who died in the line of duty representing the Jericho Fire Department on September 11, 2001 and met the PSOB requirements. He concluded that the Jericho by-laws may have ordinarily barred Mr. Winuk from "firematic" activities in fighting fires, but did not bar him from performing EMS first aid functions for which he had been trained and certified, and was in fact, the very duty he was performing when he was killed. Mr. Winuk had continued taking first responder CPR courses and held a current certificate at the time of his death.

19. The Director of the BJA however, set aside the Hearing Officer's opinion and findings and reviewed the claim de novo. One year later, the Director of the BJA concluded that Mr. Winuk's status as an associate member, precluded an award under either the PSOBA or Public Law 107-37.

## COUNT ONE

## The BJA Failed to Consider State and Local Law Contemplated by the PSOBA

20. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 18 above.

21. The defendant United States, acting through the Bureau of Justice Assistance, ("BJA" or defendant), exceeded its authority in ignoring New York State law concerning

decedent Glenn J. Winuk, and the status and conduct of Glenn J. Winuk within the State of New York, on September 11, 2001.

22. The following New York legislation S. 3764, was unanimously passed by the legislature and signed by the Governor on August 2, 2005:

> Section 1. Notwithstanding any other provision of law, Glenn J. Winuk, who served as a firefighter and emergency medical technician with the Jericho volunteer fire department or a period of 19 years, and who died on September 11, 2001 while participating in the rescue efforts in the south tower of the World Trade Center, and who, at the time of his death, was an associate member of the Jericho volunteer fire department, shall be deemed to have been an active member of the Jericho volunteer department at the time of his death with full active employment status, and the family of Glenn J. Winuk shall be eligible for all benefits, commendations, awards, or any other right or privilege as any other active member of the Jericho volunteer fire department with full active employment status.
>
> § 2.This act shall take effect immediately.

23. The BJA was required to look to state and local law to determine that status of a state or municipal employee, to determine if he was a member of a public agency serving as a firefighter or member of a rescue squad or ambulance crew. Had the BJA done so, it could only conclude that Glenn Winuk was an "active" member of the Jericho, New York Fire Department and that he was killed while providing mutual aid out of his district, pursuant to New York law when he was killed in the line of duty.

24. Accordingly, Glenn Winuk should be awarded federal recognition as a rescue worker killed in the line of duty at the World Trade Center on September 11, 2001 pursuant to the PSOBA, 42 U.S.C. § 3796 and Pub. Law 107-37 and receive all appropriate awards and recognition.

**COUNT II**

**The BJA Acted Arbitrarily and Capriciously**

25. Plaintiffs have provided substantial evidence showing substantial compliance with the PSOBA and Public Law 107-37 and their implementing regulations, and the BJA, through its agents and employees, acted arbitrarily and capriciously and failed to follow its own precedents in evaluating the claim.

To wit, BJA officials arbitrarily and capriciously:

- rejected 3 certification letters from the Jericho Fire Department that said Mr. Winuk should be recognized as their rescue worker killed in the line of duty, based on the BJA's opinion that the semantics in those letters did not meet with the BJA's arbitrary and capricious and unsupported requirement to use magic words and format;

- required further explanation of the certification, when it did not so require it from the next of kin of retired FDNY personnel killed on September 11 and who were awarded the benefits;

- discounted uncontroverted testimony from witnesses with first hand knowledge because they were associates of the decedent or, in the case of former FDNY Commissioner Tom Von Essen, rejected his rebuttal and explanation of a May 2002 letter from FDNY subordinate Daniel Nigro on mutual aid and rejected his first-hand knowledge and description of firematic activities as distinguishable from EMS activities the two divisions under his previous command;

- relied almost exclusively on the argument and opinion letter of attorney Joseph Frank, outside counsel to the Jericho Fire Department, for his personal interpretation of the Fire Department's by-laws, despite the factual evidence that controverts that opinion as well as New York State law;

- discounted the line of duty recognition given to Mr. Winuk by the Jericho Fire Department, National EMS Memorial, the State of New York, and New York State and federal legislators. Additionally, within the last year, Mr. Winuk was also recognized for his line of duty death by the New York State Fallen Firefighters Memorial in Albany, New York; the National

Fallen Firefighters Foundation in Emmitsburg, Maryland; and the U.S., Department of Homeland Security, FEMA and the U.S. Fire Administration;

- ignored 28 C..R. § 32.4 that provides that the BJA "shall resolve any reasonable doubt arising from the circumstances of the officer's death . . . in favor of payment of the death of disability benefit;"

- applied improper weight to selective evidence while ignoring or discounting other evidence in order to deny benefits to this public safety officer; and

- improperly ignored the statute's intent, its own internal precedents and Court of Claims precedents regarding line of death status and relationship to public safety organizations.

WHEREFORE, plaintiffs respectfully request this Court find that the BJA failed to correctly apply its own tests for serving a public agency in an official capacity in conformance with 42 U.S.C. § 3796b(9)(A); failed to give substantial weight to the findings of its own independent hearing examiner and others pursuant to 28 C.F.R. § 32.5 and incorrectly drew an adverse inference regarding the sufficiency of "official recognition" evidence provided by the Jericho Fire Department and the State of New York and that the BJA did not substantially comply with the PSOBA and its implementing regulations, nor those of Pub. Law 107-37 in denying plaintiff's PSOBA benefits.

WHEREFORE, plaintiffs respectfully request this Court to find that Glenn Winuk's service met the similar relationship test for serving a public agency in an official capacity and order judgment in favor of plaintiffs and demand judgment against The United States in the amount of $295,195 (the current statutory amount) and other benefits due under 42 U.S.C. § 3796-3796d-7, and plaintiff's attorneys fees and costs.

Dated: New York, New York
November 7, 2006

Andrew J. Maloney III
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10017
212-687-8181
*Attorneys for Seymour and Jay Winuk, as Co-Administrators to the Estate of Glenn Winuk, Deceased*