KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

Harry E. Kreindler (1919-1984)
Lee S. Kreindler (1949-2003)
Marc S. Moller
Steven R. Pounian
James P. Kreindler
David C. Cook
David Beekman
Blanca I. Rodriguez
Noah H. Kushlefsky
Robert J. Spragg
Brian J. Alexander
Justin T. Green
Andrew J. Maloney, III
Daniel O. Rose
Gretchen M. Nelson*
Stuart R. Fraenkel*

Francis G. Fleming
Paul S. Edelman
Milton G. Sincoff
Mark I. Labaton*
Counsel

Susan A. Friery, M.D.♦
Brendan S. Maher
Susan D. Bainnson
Vincent I. Parrett
William O. Angelley
Michael R. Sherwin+
Hilary B. Taylor°

California Office
707 Wilshire Boulevard
Suite 5070
Los Angeles, CA 90017-3613
(213) 622-6469
Fax: (213) 622-6019

*Admitted in CA only
♦Admitted in MA & DC only
+Admitted in OH only
°Admitted in CA & LA only

May 16, 2006

Ms. Hope D. Janke, Director
Public Safety Officers' Benefits Office
U.S. Department of Justice
Office of Justice Programs
Bureau of Justice Assistance
Washington, DC 20531

**Re: Glenn J. Winuk; PSOB Claim No. 01-911-414**

Dear Director Janke:

Thank you for your recent follow up correspondence that included a January 10, 2006 letter from Joseph Frank, Esq. and giving me the opportunity to respond.

Mr. Frank correctly stated that new legislation last year changed New York law regarding Mr. Winuk's status from associate member to "active" member. PSOB determinations are based, in part, on what local laws mandate on employment status such as this. Accordingly, the inquiry, even by Mr. Frank's account, should end here with a finding of granting PSOB recognition and benefits to Glenn Winuk's family.

Mr. Frank however, went on to provide a superficial review of questions put to him by DOJ attorney Jason P. Cooley, perhaps believing they were harmless hypotheticals.

Mr. Frank however, did not have the benefit of reviewing the September 10, 2005 eleven page decision of DOJ hearing examiner, Daniel Skoler. Nor had he heard nor read the sworn testimony of several witnesses who appeared at the hearing. Mr. Frank had further not seen

many of the exhibits provided to Mr. Skoler, nor scrupulously reviewed counsel's well described legal arguments set forth therein. Strangely, some of Mr. Frank's cursory responses seem to be inconsistent with the Certification letters by Jericho's own Fire Commissioners and Chiefs, long before there was any new legislation (see e.g. April 7, 2005 letter of Robert Biancanello, Chairman of the JFD Board of Fire Commissioners; May 1, 2002 letter of Fire Chief Lottes; and March 31, 2002 letter of Chief Lottes).

Mr. Frank further imparted his personal and subjective understanding of what the Jericho Fire Department by laws meant, rather than what they actually said. The critical clause on Mr. Winuk's change in status was from active firefighter, and member to "associate member." It does not read "inactive." The by laws provide a definition describing what an associate member can no longer do. An associate member cannot engage in "firematic" activities. It does not bar the member from engaging in EMT activities.*

During the hearing before Mr. Skoler, there was information, testimony, documentation and argument on what a firematic activity is and what it is not. Mr. Skoler concluded, and former FDNY Commissioner Von Essen agreed, that firematic means firefighting; for example entering a burning building to put out a fire. This requires annual training, certification and physical fitness testing because it is dangerous and rigorous work. EMTs however, are completely separate. They do not have the same requirements and the job is not considered as dangerous or physically demanding as a firefighter's job. (See e.g., testimony of FDNY Commissioner Von Essen and letter from FDNY EMS Gloffke).

Technical training in first aid, CPR and more, are required for EMT First Responders on a biannual basis. Glenn received separate training for this certification, as an active member and as an associate member of the JFD. He was issued a separate badge for this certification. (See attached). He was current when he was killed on September 11 while providing medical assistance, not firefighting. His JFD identification was found with his body.

The JFD website (jerichofd.com) makes this distinction in its recruiting advertisements. (See attached).

**"Become a Firefighter or Medical Technician."**

**"Members wishing to be EMS-only volunteers need not become firefighters."**

Glenn Winuk happened to be both.

---

* *Exclusio Unis, Inclusio Alteris* is the well accepted Rule of Statutory Construction that bars or excludes that which is specifically excluded, but includes or allows the others not specifically expressed.

While the JFD may not have known Glenn was in Manhattan and responded to the World Trade Center at the time, it has stood behind him and was proud to say he was one of them and acted on their behalf. Perhaps Mr. Frank was unaware of the many public statements made about Mr. Winuk and his on-going relationship with the JFD after he was killed in the line of duty. Additionally, Mr. Frank may not have been aware that the JFD and all its members were called to respond to help FDNY on September 11, 2001 and provided EMS members and ambulances to a staging area at Shea Stadium and firefighters and apparatus to Ground Zero and coverage for NYC fire houses.

Mr. Frank's letter further fails to identify the research under New York law regarding Workers' Comp benefits, while my initial appellate papers did just that, highlighting several cases where New York courts granted benefits to volunteers 'acting in the scope' on far more questionable facts that these. Perhaps Mr. Frank as the Fire Board attorney, does not want to encourage the Winuk family to make a Workers' Comp claim. None has been made and it is not relevant for discussion here.

As cursory as his response was, even Mr. Frank however, concludes that Mr. Winuk should be entitled to the PSOB award.

No one has challenged the heroic acts of Glenn Winuk on the morning of September 11, and nothing prevented or proscribed the previously granted authorization to act as an EMT that morning. Official recognition for Mr. Winuk and his family who have continued to suffer through this lengthy administrative process, is long overdue.

Mr. Winuk's law firm has raised millions of dollars to dedicate a sculptured bronze wall dedicated to the FDNY and rescue worker Glenn Winuk, who were killed on September 11 to be hung on the outside wall of the Ten-Ten firehouse on June 10, 2006, only feet from where Glenn was killed in the line of duty. We hope that the Department of Justice finally joins in granting the PSOB recognition before that date to complete the healing process for the Winuk family.

Respectfully submitted,

KREINDLER & KREINDLER LLP

By [signature]
Andrew J. Maloney III

AJM/gm
Enclosures