**KREINDLER & KREINDLER LLP**
100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

Harry E. Kreindler (1919-1984)
Lee S. Kreindler (1949-2003)
Marc S. Moller
Steven R. Pounian
James P. Kreindler
David C. Cook
David Beekman
Blanca I. Rodriguez
Noah H. Kushlefsky
Robert J. Spragg
Brian J. Alexander
Justin T. Green
Andrew J. Maloney, III
Daniel O. Rose
Gretchen M. Nelson*
Stuart R. Fraenkel*

Francis G. Fleming
Paul S. Edelman
Milton G. Sincoff
Counsel

Susan A. Friery, M.D.◆
Jacqueline M. James
Brendan S. Maher
Susan D. Bainnson
Dennis J. Nolan
Vincent I. Parrett
William O. Angelley
Michael R. Sherwin+

California Office
707 Wilshire Boulevard
Suite 5070
Los Angeles, CA 90017-3613
(213) 622-6469
Fax: (213) 622-6019

*Admitted in CA only
◆Admitted in MA & DC only
+Admitted in OH only

April 7, 2005

**Via Federal Express**

Daniel L. Skoler
PSOBA Hearing Officer
7036 Buxton Terrace
W. Bethesda, MD 20817

**Re: Glenn Winuk**

Dear Mr. Skoler:

In advance of our April 14, 2005 hearing I am enclosing the following new material:

- PSOBA Certification letter from the Jericho Fire District.
- Photos of firefighter Winuk in uniform; photo of his Jericho Fire Department ID card recovered from his wallet at Ground Zero.
- Affidavit of EMS/FDNY Paramedic Joseph Sanders who was present when the body of Glenn Winuk was recovered.
- A letter from Joseph Mlynarczyk who conducted a CPR first responder course that Mr. Winuk participated in and qualified him as a current New York State Certified First Responder (CFR) from November 3, 1999 through November 30, 2001 (after his death) and accompanying attendance records.
- American Heart Association CPR Certification valid through 11/30/01.

PLAINTIFF'S EXHIBIT NO. 1 FOR IDENTIFICATION DATE: 4/14/05 RPTR: NS PENGAD 800-631-6989

- The New York State Emergency Medical Services Code (see §§ 800.08; 800.17; 800.20).

- New York State General Municipal Law § 209-(i) on Mutual Aid.

- A letter from National EMS Memorial Service which honored Mr. Winuk as a line of duty death and as one of their own at its annual memorial service in Roanoke, Virginia.

- New York State Bill 3764 currently pending in the New York State Legislature codifying Mr. Winuk's status as an "active" member of the Jericho Fire Department.

- Letters from Congressman Peter T. King to the Jericho Fire Department and U.S. Attorney General Alberto Gonzales urging that Mr. Winuk be recognized as a public safety officer killed in the line of duty.

- Nassau County Executive Thomas Gulotta letter to Glenn Winuk regarding his rescue services performed during the Avianca Air Disaster.

In addition, we expect to have testimony from the decedent's father Seymour Winuk and brother Jay Winuk, former FDNY Fire Commissioner Tom Von Essen, and a current or former member of the Jericho Fire Department. I will make a brief opening statement, and ask questions of the witnesses. Each of us welcome questions from you and at the end I will make a closing statement.

The official certification from the Jericho Fire Department (originally intended by the March 31, 2002 letter from Chief Lottes and which also resulted in "line of duty death" recognition from the Twin Towers Fund and National EMS Memorial Service) should end the inquiry here.

In reviewing the above documents in connection with the prior submissions, there appears to be no dispute that Mr. Winuk offered his EMT skills to the FDNY/NYPD in the lobby of WTC 2 during the calamity. He was carrying his Jericho Fire Department identification card (photo of the burned ID card is enclosed) and carrying EMT equipment. It is also evident that this offer of assistance and mutual aid (see e.g. New York State General Municipal Law § 209(i)) was accepted in the secured area of the lobby of the South Tower.

There can be no question that he was killed while rendering first aid to victims of the September 11 terrorist attacks (see e.g. affidavit of FDNY/EMS paramedic Joseph Sanders).

According to documentation supplied by Joseph Mlynarczyk (enclosed), Glenn continued to stay current and active as an EMT (see N.Y.S. Emergency Medical Services, Art. 39, § 3001-3002; and Chapter VI of Title 10 (Health) of the Official Compilation of Codes, Rules and Regulations, Part 800 Emergency Medical Services, §§ 800.08; 800.17; 800.20 enclosed). There is no question he was a qualified, active and current EMT.

To be an "active" fire fighter as opposed to an EMT, one must pass an annual physical, and participate in certain annual drilling/training exercises. Not so to remain an active EMT. The only requirement was to take periodic refresher courses as outlined in the EMS regulations, which Glenn was doing.

Mr. Winuk at the time of his death was in fact a "member" of the Jericho Fire Department, clearly a public service entity.

The PSOBA does not specify that membership be "active" as opposed to associate, probationary or retired. Mr. Winuk's EMT status furthermore was indeed "active" pursuant to state law. The PSOBA must be liberally construed.

The PSOBA, 42 U.S.C. § 3796(d)(1), is intended to "enhance the appeal of service in public safety agencies." Section 3796(b)(4) defines "firefighter as an individual serving as a designated member of a legally organized volunteer fire department or rescue squad or ambulance crew." See also § 3796(b)(8). Glenn served in both capacities for 19 years and remained active as an EMT at the time of his unfortunate death. He put his skills to work during such large calamities as the 1990 Avianca air disaster in Cove Neck, New York; the 1993 World Trade Center bombing and the 1995 lower Manhattan subway bombing. The latter of these two, offering mutual aid to the FDNY/NYPD.

The liberal interpretation and expansive application of the PSOBA can be seen in many instances. For example, the Ninth Circuit Court of Appeals held that Congress intentionally wanted the award to be applied liberally.

> Congress was concerned that states and municipalities did not provide adequate death benefits to police officers and their families and that the low level of benefits impeded recruitment efforts and impaired morale. By increasing the level of benefits it sought to remedy these defects and thereby assist in the national fight against crime.
>
> The motivation for this legislation is obvious: The physical risks to public safety officers are great; the financial and fringe benefits are not usually generous; and the officers are generally young with growing families and heavy financial commitments. The economic and emotional burden placed on the survivors of a deceased public safety officer is often very heavy.

> The dedicated public safety officer is concerned about the security of his family, and to provide the assurance of a Federal death benefit to his survivors is a very minor recognition of the value our government places on the work of this dedicated group of public servants.

*Russell v. Law Enforcement Assistance Administration*, 637 F.2d 1255, 1261 (9th Cir. 1980). In *Russell,* the Court found that a police officer who was killed in a traffic accident while driving home from work late at night, was killed "in the line of duty" because he was required to use his personal vehicle for work travel, in addition to late night commutation, and was transporting law enforcement equipment. The court looked to liberal workers' compensation laws for guidance and found an exception to the normal exclusion for compensation in "coming and going" cases. The key was finding the existence of a sufficient nexus between employment or affiliation and the injury.

Similarly, the Court of Claims reversed a Bureau of Justice Act (BJA) denial of PSOBA benefits to a police officer who was killed while driving home because he was technically still "on the clock" having left 30 minutes early to offset uncompensated overtime. *Davis v. United States*, 50 Fed.C1.192 (2001). The Court ruled that the BJA failed to afford substantial weight to state and local administrative agencies finding that the decedent was "on duty" even though driving home. The BJA further failed to apply the Reasonable Doubt Rule to the circumstances of the officer's death.

The PSOBA regulations specify that "[t]he Bureau shall resolve any reasonable doubt arising from the circumstances of the officer's death . . . in favor of payment of the death . . . benefit." 28 C.F.R. § 32.4. Accordingly, any doubt as to defining Mr. Winuk's "status" must be resolved in his favor and for granting benefits.

An officer's inclusion in a national memorial is also further evidence that he should be considered an active volunteer killed in the line of duty. See e.g., *Bice v. United States*, 61 Fed. C1.420 (2004)(volunteer firefighter who was exposed to heavy carbon monoxide during fire never fully recovered and died six weeks later of a heart attack, was honored and included at the national memorial for firefighters who died in the line of duty; BJA was criticized by the Court for not giving any weight to this recognition and for imposing an unauthorized evidentiary requirement on claimant by requiring objective or empirical evidence to prove exposure to smoke and carbon monoxide substantially contributed to her death.

As you already know, Glenn was honored at the National EMS Memorial and by the Twin Towers Fund as an active rescue worker killed in the line of duty.

Clearly, the PSOBA must be liberally applied, not only as a matter of fairness, but to effectuate the intent of Congress to attract, in this case, volunteers, rather than repel them on technical grounds.

Finally, the Patriot Act of 2001 amended the PSOBA after September 11, 2001 to specifically recognize the heroic and selfless acts of those who assisted on September 11 and for those in the future who assist in rescue and recovery efforts related to a terrorist attack, by accelerating the review and award process to take place within 30 days of receiving the certification by the affiliated public service entity.

Indeed, Mr. Winuk's case has attracted the attention of not only Congressman Peter King and others, but the injustice of the BJA's initial denial of benefits based on a technical argument, has prompted the often hard to move State Legislature, to propose a bill that would make Glenn's firefighting status "active" as a matter of law, even though he was already "active" as an EMT. This same retroactive status issue has already become law for three retired FDNY firefighters who were killed at the WTC while assisting rescue efforts so that they would be and have been, similarly recognized.

**Conclusion**

There can be no doubt that Glenn Winuk was a hero who died while valiantly trying to provide emergency medical treatment to injured persons in the secured lobby of World Trade Center Tower 2. His qualifications, membership status with the Jericho Fire Department, skills, experienced calm in the face of calamity and willingness to help, were recognized and accepted by the FDNY and NYPD and are supported by the Jericho Fire Department authorities.

Recognition by the Justice Department is long overdue and it is time to correct that injustice.

Respectfully submitted,

KREINDLER & KREINDLER LLP

By: Andrew J. Maloney III

AJM/gm