IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SEYMOUR WINUK, individually<br>as the father of<br>GLENN WINUK, deceased, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-770C<br>(Judge Horn) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

JOINT STIPULATION OF FACTS

Pursuant to this Court's Order, dated February 22, 2007, defendant, the United States, and plaintiff, Seymour Winuk, respectfully submit this joint stipulation of facts with citations to the administrative record. To the extent that Mr. Winuk seeks to include facts that are not part of the administrative record, he has filed a separate section of this document entitled "Plaintiff's Statement of Facts."

1. On September 11, 2001, Mr. Winuk died tragically in the collapse of the World Trade Center. AR Tab 10.

2. Prior to his death, and since 1979, Mr. Winuk had served, in one form or another, as a volunteer member of the Jericho Fire Department ("JFD"). Mr. Winuk was, at one time, trained as a firefighter and certified by New York state as an EMT. In 1998, Mr. Winuk elected to change his status from active firefighter to associate member of the JFD because of his increasing workload as a lawyer in Manhattan, and he was an associate member at the time of his death. AR Tab 40 at 48. Mr. Winuk was still an associate member of the JFD when he was killed on September 11, 2001. Id.

3. On September 11, 2001, Mr. Winuk, who was a partner at the law firm Holland & Knight LLP, evacuated personnel in his own building and was last seen running toward the World Trade Center "donning EMS equipment." AR Tab 14. The Trade Center was "adjacent" to his office. Id.

4. In March 2002, rescue workers recovered Mr. Winuk's body in what would have been the lobby of the World Trade Center south tower in the vicinity of the bodies of other rescue workers. AR Tab 40d. Mr. Winuk was found with a photo ID card, in the wallet of his pants pocket identifying him as a member of the JFD and was wearing surgical gloves, either wearing or holding a stethoscope, and beside an EMT bag. Id. (See photo of EMT Kit Tab 48c).

5. In December 2003, Mr. Winuk's father and mother, Seymour Winuk and Elaine Winuk, filed a claim with the Department of Justice, Office of Justice Programs, Bureau of Justice Assistance ("BJA") for death benefits pursuant to the Public Safety Officers' Benefits Act ("PSOBA").

6. In July 2004, the PSOBA office determined that the Winuks' claim failed to satisfy the requirements of the PSOBA. The PSOBA office also concluded that Mr. Winuk was an associate member of the JFD and did not hold the same privileges or obligations as full active members. AR Tab 2. The PSOBA office also found that no proper certification had been received from a public agency. AR Tab 2.

7. The Winuks appealed this decision. The BJA appointed an independent hearing officer, Daniel Skoler, who, after holding a hearing, agreed that it was "debatable" whether a public agency certification had been provided with the application. AR Tab 3 at 4. Another letter from the JFD that was sent to the hearing officer, dated April 7, 2005, stated: "I am hereby

certifying that Glenn Winuk should be considered to have been a public safety officer killed in the line of duty . . . ." AR Tab 40b. The hearing officer determined that, although Mr. Winuk's associate status in the Jericho Fire Department prevented Mr. Winuk from engaging in "firematic" activities, he nevertheless could and did provide emergency medical services upon behalf of the Jericho Fire Department. Id. at 3. The hearing officer stated that the Jericho Fire Department's by-laws "refer only to 'Associate Membership' and do not use or define "non-active" terminology or status." AR Tab 3 at 5. The hearing officer found that Mr. Winuk's provision of emergency medical services was authorized by the JFD and had been accepted by the New York Fire Department ("FDNY") on September 11, 2001. Id. at 7-8. The hearing officer relied upon seven pieces of evidence, including the testimony of Tom Von Esson, former fire commissioner, for his finding that mutual aid had been offered by Mr. Winuk and had been accepted by the FDNY. AR Tab 3 at 7-8. Mr. Von Essen testified before the hearing officer that "I'd never seen official acts of us requesting [mutual aid] until September 11th, where we did request volunteers and other paid departments to help us out." AR Tab 40 at 63. The record further reflected that Mr. John Navaretta, a former JFD firefighter, stated that Mr. Winuk had provided mutual aid to other fire departments. AR Tab 40 at 26-27. Mr. Navaretta stated, "[b]efore Glenn would do anything he would report in to somebody." Id. at 27. Mr. Navaretta also stated that Mr. Winuk provided mutual aid at the 1993 World Trade Center bombing, id. at 25, the 1994 New York City subway bombing, id. at 30, the 1990 Avianca plane crash, id. at 31-32 and 40l, and various wildfires in Suffolk County New York. Id. at 31. The hearing officer concluded that prima facie evidence established that the FDNY authorized Mr. Winuk's participation that morning. AR Tab 3, at 7-8.

The hearing officer concluded that Mr. Winuk was a public safety officer who died in the line of duty on September 11, 2001, and recommended he receive the recognition and benefits due under the Act. Id.

8. In August 2005, while this matter was pending before the hearing officer, New York State Governor George Pataki signed bi-partisan legislation stating:

> Glenn Winuk, who served as a firefighter and emergency medical technician with the Jericho volunteer fire department for a period of 19 years, and who died on September 11, 2001 while participating in the rescue efforts in the south tower of the World Trade Center, and who, a the time of his death, was an associate member of the Jericho volunteer fire department, shall be deemed to have been an active member of the Jericho volunteer fire department at the time of his death with full active employment status . . . .

AR Tab 40j.

Mr. Winuk's efforts were also recognized by the National EMS Memorial Service (May 2003) AR Tab 40i; the International Association of Fire Chiefs Volunteer and Combination Officers Section (May 2002), AR Tab 18, Nassau County (May 2002) AR Tab 40s; New York City Mayor's Office (November 2001) AR Tab 15; New York State Senator Marcellino (2005) AR Tab 40p**;** Congressional representatives' recognition (2005, 2006) (Sen. Hilary Clinton; Rep. Peter King) AR Tab 40k, 62a, 63a**.**

9. Pursuant to 28 C.F.R. § 32.24(h)(2001), the director of the BJA reviewed the hearing officer's decision. On September 1, 2006, the BJA issued its final decision holding that Mr. Winuk was not a public safety officer within the meaning of either the Public Law 107-37 or the PSOBA. AR Tab 4 at 26. The BJA also determined that, even if Mr. Winuk had been a public safety officer, he did not die in the line of duty. Id. The BJA concluded that the 2005

New York law was not entitled to "any special evidentiary weight." Id. at 24. However, the BJA relied upon other New York law, e.g., GML 209-i, to support its decision. It further concluded that awards that it gave to three FDNY firefighters (who were later acknowledged to have been retired) killed on 9/11 "serv[ed] as no guide" in the Winuk claim. AR Tab 4 at p. 25.

10. The BJA determined that the Winuks' claim did not meet the requirements of Public Law 107-37. AR Tab 4 at 8. The BJA stated that "the relevant public agency never provided a certification, within the meaning of Public Law 107-37, that the decedent was a public safety officer employed by it who died in the line of duty." Id. The BJA considered, among other things, two letters written by the Chief of the JFD and one letter from the Chairman of the Jericho Fire District. Id. (citing AR Tabs 12, 13, 40b), and found that none provided a "clear and unequivocal statement to BJA of how the public agency actually considers the individual and the individual's activity at the time he suffered his fatal injury." Id. The BJA concluded that, even if one of these letters had included a proper certification, other contradictory record evidence left "at best, equivocation as to the application of Public Law 107-37 to the decedent." Id. at 9 (citing AR Tabs 7, 28); see also id. at n.32 (explaining the weight accorded to the different documentary testimony).

11. The BJA also determined that the Winuks' claim failed to meet the requirements of the PSOBA. The BJA relied upon the opinion letter from the Jericho Fire District general counsel Joseph Frank that Mr. Winuk, as an associate member of the fire department, was not authorized to act upon behalf of the fire department. Id. at 12-13 (citing AR Tabs 42-45). The BJA rejected the distinction made by the hearing officer between members of the fire department who could engage in "firematic" activities and those who could engage in emergency medical

services. Id. at 14-15.

12. The BJA also held that Mr. Winuk did not die in the line of duty, pursuant to28 C.F.R. § 32.2(c)(2), because he was not authorized or obligated by the JFD to respond to the attack on the World Trade Center. AR Tab 4 at 19. The BJA acknowledged that New York "Mutual Aid" law, General Municipal Law § 209-i, authorizes a volunteer firefighter to assist another fire department under certain conditions specified in the statute. Id. at 21. The BJA, however, stated that the Volunteer Firefighters' Benefit Law § 3 (workers' compensation law), defined volunteer firefighter as only "active" volunteers. Id. The BJA also rejected its hearing officer's finding regarding FDNY's acceptance of Mr. Winuk's participation. Id. at 22. The BJA held that Mr. Winuk's services were not "accepted" by any commanding officer at the FDNY based on a letter from FDNY Chief Nigro. Mr. Von Esson stated that Chief Nigro "was never in the building. He was outside the building the whole time." AR Tab 40 at 67. The New York law cited allows "the officer in command" of a fire "company" or "fire department," to authorize "volunteer firemen" to lend their assistance. AR Tab 40h.

13. Finally, the BJA specifically addressed the 2005 New York law. AR Tab 4 at 24-25. The BJA stated that it accorded "no special evidentiary weight" to this law, acknowledging that the new law could govern benefits under state law, but does not alter the BJA's analysis under Federal law. Id. The BJA did, however, consider the Volunteer Firefighters' Benefit Law §3 and the Mutual Aid Law 209-i to support its final agency determination. AR Tab 4, at 21, 24.

14. On November 13, 2006, Seymour Winuk, as co-administrator of Mr. Winuk's estate, appealed the BJA's decision to this Court. By consent, the Winuks have agreed to amend the complaint by dropping Jay Winuk from the caption as a claimant-petitioner and proceeding

with Seymour Winuk in his personal capacity.

15. The record demonstrates that, based upon a properly executed certification that they were public safety officers who died in line of duty, the BJA awarded Public Law 107-37 benefits to three FDNY firefighters, on July 26, 2002. AR Tab 34. Neither the record in this case nor the record in any of the three firefighters' claims contains any post-decision information. However, although this information is not contained in the record, both parties have become aware that the three firefighters were in fact retired. Only after the benefits were paid did the Office of Justice Programs, office of the general counsel learn that those firefighters were retired. This information was not relevant to the BJA's determination in this case.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Andrew J. Maloney
ANDREW J. MALONEY
Kreindler & Kreindler, LLP
100 Park Ave.
New York, NY, 10017-5590
(212) 687-8181

Attorney for Plaintiff

March 1, 2007

s/ Claudia Burke
CLAUDIA BURKE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 353-9063
Fax: (202) 514-7965

Of Counsel:
RAFAEL A. MADAN
General Counsel

JASON P. COOLEY
Attorney Advisor
Office of the General Counsel
Office of Justice Programs
Department of Justice
810 7th Street, N.W.
Washington, D.C. 20531

Attorneys for Defendant

March 1, 2007

PLAINTIFF'S STATEMENT OF FACTS

Pursuant to this Court's Order, dated February 22, 2007, plaintiff, Seymour Winuk, respectfully submits this brief statement of fact which defendant, the United States, would not agree to include in the joint statement of facts, stating that they were not part of the Winuk file at the BJA, but may be contained in other files maintained by the BJA.

1. On October 2, 2002, the New York/New Jersey Port Authority ("PA") sent a letter to the BJA stating that 13 of its employees were serving in their official rescue capacity and were killed in the line of duty . . . ." Another letter dated October 18, 2002, was sent by the PA Chief of the Department to the BJA that stated "I am hereby certifying that the following public safety officers listed in the attached were killed in the line of duty . . .." and once again listed the same 13 Port Authority employees. Phone calls were made between the PA Chief and Eileen M. Garry, Associate Deputy Director of the BJA to discuss the eligibility of these 13 PA employees. By letter date January 22, 2003, BJA Associate Deputy Director Eileen Garry notified the PA that "the following 13 deceased Port Authority civilian staff members . . . are **not eligible** to receive benefits under the [PSOB] Act." See Plaintiff's Exhibit A for the above described correspondence.[1]

2. Three years later on January 13, 2006, the PA sent a third letter to the BJA to certify that all 13 of the same PA employees were public safety officers who died in the line of duty. One of them, Eugene Raggio family, had filed a claim and challenged the BJA denial in an appeal. Mr. Raggio successfully won his appeal before the hearing examiner and the BJA

---

[1] The documents in the attachments to plaintiff's statement of facts will be filed on Monday, March 5, 2007.

affirmed it by March 2006. See Plaintff's Exhibit B. Between April 2006 and June 2006, the other PA employees' beneficiaries claims were filed. By June 30, 2006, all 12 of those remaining PA claims were granted. See Plaintiff's Exhibit C that approves each of the claims in summary fashion. Mr. Raggio's claim was the only claim that the BJA acknowledges an analysis that included a claim denial and appeal to a hearing officer that resulting in the granting of his claim. As the PA certification letter indicates, most of these PA employees were operations or building maintenance managers, architect designers and a locksmith. Plaintiff's Exhibit A (2006 PA letter).

3. On February 22, 2007, the Jericho Fire Department ("JFD") sent BJA Director Herrariz a letter in rebuttal to several of the BJA's conclusions, stated that it had previously certified Mr. Winuk and urged that Mr. Winuk be recognized as a rescue worker killed in the line of duty and afforded recognition and benefits under the PSOBA. See Plaintiff's Exhibit D.

4. The Jericho Fire Department honored Mr. Winuk's line of duty sacrifice with a memorial plaque at a park near to the firehouse and in an annual ceremony. The National Fallen Firefighters Association (Emittsburg, MD) honored Mr. Winuk's line of duty death in a ceremony in 2006 and inducted him onto its honor role as did the New York State Fallen Firefighters in 2006. The FDNY Honor Legion also honored Mr. Winuk's line of duty death in 2006 and separately Mr. Winuk was honored before President Bush, Governor Pataki, Mayor Bloomburg, former Mayor Giuliani, Representatives King and Nadler and current FDNY Commissioner Scopetta and former Commissioner Von Essen at the first permanent memorial at Ground Zero on the 56 foot bronze wall sculpture affixed to the "Ten/Ten Firehouse" FDNY identifying him and the 343 FDNY firefighters killed in the line of duty on September 11, 2001. See Plaintiff's Exhibit E.

s/ Andrew J. Maloney

ANDREW J. MALONEY
Kreindler & Kreindler, LLP
100 Park Ave.
New York, NY, 10017-5590
(212) 687-8181

Attorney for Plaintiff

March 1, 2007

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 1st day of March, 2007, a copy of the foregoing Joint Statement of Facts, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Andrew J. Maloney, III
Kreindler & Kreindler, LLP
100 Park Avenue
New York, NY 10017
(212) 687-8181

s/ Claudia Burke