**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

SEYMOUR WINUK, individually as the father of GLENN WINUK, Deceased

Plaintiff,

No. 1:06-cv-00770 (MBH)

v.

THE UNITED STATES OF AMERICA,

Defendant.

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF 3 GOVERNMENT DOCUMENTS IN THE WINUK FILE; AND MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiff, by his counsel Kreindler & Kreindler LLP, respectfully moves this Court to compel production of 3 documents identified by defendant Government that pertained to the fact finding process by the Bureau of Justice ("BJA") division at the United States Department of Justice.

In addition, plaintiff moves to supplement the administrative record with documents that were made available to the BJA prior to its September 2006 Final Determination, that were either considered and distinguished or ignored, over the objection of plaintiff during the BJA's final review.

**FACT FINDING AND REVIEW**

After the independent hearing examiner appointed by the BJA issued an opinion in favor of granting plaintiff PSOBA recognition and benefits to plaintiff on September 10, 2005, the BJA took *another* additional *year* to continue its review of that decision before overturning it. During

that year, counsel for plaintiff communicated with the BJA and continued to answer questions, provide documents and advocate in favor of affirming hearing examiner Daniel L. Skoler's September 10, 2005 opinion.

The BJA has identified three documents described as "internal recommendations" in the Winuk case, but has refused to produce them. See attached Exhibit A privilege log.

They are:

1. 12/23/03 memo E. Martin to M. Guerriere (cc: R. Carradini, Esq.)

2. 11/18/05 memo G. Brady, Esq. to D. Herraiz.

3. 12/7/05 memo G. Brady, Esq. to D. Herraiz (cc: H. Janke).

Defendant objects to production on the grounds that the documents contain attorney-client privileged material and would disclose their deliberative process.

As an initial matter, the Court should review these three documents *in camera* and determine if they even meet the attorney-client privilege criteria. "The attorney-client privilege protects communications between the attorney and his client for the purpose of obtaining legal advice." *AAB Joint Venture v. U.S.*, -- Fed.Cl. ----, 2007 WL 646158, Fed.Cl.,2007 (Feb. 28, 2007) (internal citations omitted). The requirements for asserting the attorney-client privilege are:

> "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding ...; and (4) the privilege has been (a) claimed and (b)

not waived by the client." *Id.* (internal citations omitted).

The protection does not extend to underlying factual information, but rather only to the communication itself. *Id.* Conclusory statements by defendant that the privilege applies are insufficient to satisfy defendants burden to evoke the privilege. *Id.*

There are strict procedural requirements and elements the government must meet before successfully utilizing the deliberative process privilege to prevent the disclosure of documents. *Pacific Gas & Elec. Co. v. United States*, 70 Fed.Cl. 128 (2006) (*aff'd on reconsideration*, 71 Fed.Cl. 205 (2006)).

The party seeking to invoke the deliberative process privilege has the burden of justifying its application. *Id.* at 133. citing *Kaufman v. City of New York*, No. 98 Civ. 2648(MJL)(KNF), 1999 WL 239698, at *4 (S.D.N.Y. Apr. 22, 1999). The application of the deliberative process privilege, also, must be narrowly construed. *Pacific Gas & Elec. Co.*, at 133, citing *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540 (W.D.Wash.2000).

The procedural requirements are as follows:

> "The agency head, or designee, must invoke the privilege through an affidavit which states, inter alia, that he or she has reviewed each of the relevant documents and provides the reason(s) why preserving confidentiality-rather than the agency's interest in the particular action-outweighs the public interest in disclosure." *Kaufman v. New York*, No. 98 Civ. 2648,(MJL)(KNF) 1999 WL 239698, at *5(S.D.N.Y. Apr. 22, 1999).

Courts have often found that the deliberative process privilege cannot be asserted by government counsel. *Id.* The party seeking protection must state, with particularity, the information that is subject to the privilege. *Pacific Gas & Elec. Co,* at 135. The information sought to be shielded must be identified and described. *Id.*, citing *Reino de Espana*, 2005 WL

1813017, at *12.

The person claiming the privilege must provide the court with "precise and certain reasons for maintaining the confidentiality of the requested document." *Id.* citing, *Walsky,* 20 Cl.Ct. at 320.

The time to make the showing that certain documents are privileged is at the time the privilege is asserted, "not months later when the matter is before the Court on a motion to compel." *Pacific Gas & Elec. Co*, at 135.

More importantly, defendant has moved for a judgment on the administrative record and has argued that it has not acted arbitrarily or capriciously. Surely if one of the three BJA memos contained evidence that it was acting arbitrarily or capriciously, it would not only be relevant, but it would cut to the core of the BJA's mis-application of the PSOB Act. Such evidence is not privileged but would be waived if the BJA ignored standards for review articulated in both the Act[1] and its Congressional commentary as well as voluminous case law interpreting the Act.

It is not the job of the BJA or the DOJ to win at all costs, the Government's mandate is to see that "justice is served." Justice can only be properly administered when it is transparent, rather than administered in smoke filled rooms filled with cloak and dagger manipulation.

The BJA has admitted that its decisions regarding 9/11 rescue workers considered under the PSOB Act and Pub. Law 107-37 were, at a minimum, applied inconsistently. Inconsistency is *prima facie* evidence of arbitrary and capriciousness. "An agency decision is arbitrary and capricious if the agency has relied on factors which congress has not intended it to consider,

---

[1] The "Act" is meant to include the parallel Public Law 107-37, which supplemented the PSOB Act, specifically for September 11 rescue workers.

entirely failed to consider an important aspect of the problem, ordered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Northwest Environmental Defense Center v. Bonneville Power Admin.* --- F.3d ----, 2007 WL 163102, (Jan. 24, 2007) citing *State Farm,* 463 U.S. at 43, 103 S.Ct. 2856.

"An agency is entitled to change its course when its view of what is in the public's interest changes. However, 'an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute." *Northwest Environmental Defense*, citing *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970) (footnotes omitted), *quoted in State Farm,* 463 U.S. at 57, 103 S.Ct. 2856; *see also Atchison, Topeka & Santa Fe Ry. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973) (plurality opinion) ("Whatever the ground for the [agency's] departure from prior norms, ... it must be clearly set forth so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate.") (emphasis supplied); *W. States Petroleum Ass'n v. EPA,* 87 F.3d 280, 284 (9th Cir.1996) (stating that an agency "must clearly set forth the ground for its departure from prior norms").

In the Joint Stipulation of Facts at ¶ 15 it conceded that it granted PSOB recognition and benefits to three retired FDNY firefighters, but defends by arguing that its *general counsel* did not know they were retired when it granted those awards. No analysis for those claims has ever been provided. Upon information and belief, one or more of the sequestered BJA documents

discusses Winuk vis-a-vis the retired FDNY rescue workers. Indeed, the BJA's arbitrary and capricious over-reach goes much further than the three FDNY cases, as discussed below, it borders on a vendetta against Mr. Winuk in isolating him as an unpaid volunteer. In light of the BJA's conduct, any privilege it may have had has therefore been waived.

Plaintiff will be satisfied with the Court's *in camera* inspection to determine if the 3 memos are (a) privileged and (b) have not been waived and do not contain any arguable evidence of arbitrary and capricious conduct.

**SUPPLEMENTAL RECORD**

Plaintiff requested that defendant agree to supplement the record to contain the BJA's correspondence with the Port Authority of New York/New Jersey ("PA") regarding 13 PA employees who were killed at the World Trade Center on September 11, 2001 as well as miscellaneous documents supplied to the BJA by plaintiff reflecting multiple additional local, state and national recognition of Mr. Winuk's line of duty death. Both categories of documents were in the BJA's possession prior to its September 1, 2006 Final Determination in the instant case.

**PORT AUTHORITY**

Plaintiff cited the initial denial of PSOBA recognition of the 13 PA employees by the BJA and subsequent reversal granting all 13 PA employees the recognition during the pendency of the Winuk case in 2005 and 2006 as comparative cases. Once again the mysterious decision making process went to work behind closed doors and the BJA refused to explain the inconsistent results during the pendency of the Winuk case or since, with the one exception of the Raggio case. Either the BJA considered and distinguished the 13 PA cases, or it ignored them all together, in

deciding Winuk. Defendant refers to some of this correspondence at footnote 2 in the Declaration of Claudia Burke, and did indeed recently provide some additional correspondence. Defendant further perpetuates semantic hairsplitting in characterizing its initial denial as a "merely advisory opinion." Defendant nonetheless refuses to include them in the record.

For the BJA to refuse to include them in the administrative record when they were previously argued as relevant cases and documents by plaintiff, prior to the BJA's Final Determination, not only shows it has something to hide, but is an attempt to prevent the Court from reviewing the BJA's conduct in it's entirety.

These documents were further identified in Plaintiff's Statement of Facts that were attached to the Joint Statement of Facts by defendant.[2]

The documents are identified as:

- October 2, 2002 PA letter to BJA certifying 13 PA employees
- October 18, 2002 PA letter to BJA certifying 13 PA employees
- January 22, 2003 BJA letter to PA denying eligibility to the 13 PA employees
- January 23, 2006 PA letter to BJA certifying 13 PA employees by job title
- July 26, 2004 Raggio letter to BJA appealing its denial
- May 12, 2005 Raggio Determination by Hearing Officer Gemignani granting award
- March 24, 2006 BJA Final Agency Determination summary granting Raggio award
- June 30, 2006 BJA Final Agency Determination summaries granting awards in

[2] There are three documents that post dated the September 2006 Final Determination that were also provided to the Government, but obviously not considered before the BJA's Final Determination, and will therefore be attached as exhibits to plaintiff's brief, rather than a supplement to the record.

each of the remaining 12 PA cases

and are attached hereto as Exhibit B.

**LINE OF DUTY DEATH RECOGNITION**

Throughout the last several years, multiple local, state and national entities honored Mr. Winuk as a rescue worker killed in the line of duty and not simply another civilian good Samaritan as defendant characterizes him. Some of these were included in the Administrative Record, others, inexplicably were not and in fact, defendant has refused to do so without explanation.

Plaintiff moves to include them in the Supplemental Record. They are identified as documents relating to:

- March 31, 2006 recognition by the National Fallen Firefighters Foundation of Emmitsburg, Maryland.
- June 11, 2006 Ground Zero Memorial Wall Dedication honoring Winuk and 343 FDNY rescue workers killed in the line of duty.
- August 21, 2006 recognition by the New York State Fallen Firefighters Memorial Committee, Inc., Albany, New York.

and are attached hereto as Exhibit C.

If the Court grants any or all of the above motions, plaintiff will supplement the record with these documents and number their pages in sequence that follows the previously filed administrative record.

WHEREFORE, plaintiff respectfully requests: (1) the Government produce the 3 documents it claims are privileged to the Court for an *in camera* inspection; (2) if the Court determines that any of the 3 documents are not privileged or that the privilege has been waived,

that it order the document(s) be included in the Supplemental Record; and (3) order the PA documents and honorarium documents identified by plaintiff herein be included in the Supplemental Record.

Dated: New York, New York
March 14, 2007

Respectfully submitted,

By: ____________________

Andrew J. Maloney III
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10017
212-687-8181
*Attorneys for Seymour Winuk,*
*as Plaintiff and Administrator to the Estate of*
*Glenn Winuk, Deceased*