**EXHIBIT B**

**THE PORT AUTHORITY OF NY & NJ**

JOSEPH MORRIS
CHIEF OF DEPARTMENT
PORT AUTHORITY TECHNICAL CENTER
241 ERIE STREET, ROOM 302
JERSEY CITY, NJ 07310
(201) 239-3693
E-mail: jmorris@panynj.gov

October 2, 2002

The Honorable Richard Nedelkoff
Director
Bureau of Justice Assistance
Washington, DC 20531

Dear Director Nedelkoff:

Pursuant to P.L. 107-37 signed by the President on September 18, 2001, to provide for the expedited payment of certain benefits for a public safety officer who died as a direct and proximate result of a traumatic injury sustained in the line of duty as described in section 1201(a) of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796(a) in connection with the terrorist attacks of September 11, 2001, I am hereby certifying that the attached list of thirteen employees of the World Trade Department of The Port Authority of New York and New Jersey, a public agency, were serving in their official rescue capacity and were killed in the line of duty as a result of sustaining traumatic injuries.

Please coordinate with Police Officer Dane Castro-Recio of my staff for matters relating to this process. He can be reached at 201-871-2100.

Sincerely,

Joseph Morris

Joseph Morris
Chief of Department

cc: Eileen Garry

att.

Deceased rescue employees of The Port Authority of New York and New Jersey's World Trade Department

1. Joseph Amatuccio
2. James Barbella
3. Edward Calderon
4. Carlos da Costa
5. Frank DeMartini
6. Kenneth Grouzalis
7. Douglas Karpiloff
8. Robert Lynch
9. Peter Negron
10. David Ortiz
11. Eugene Raggio
12. Francis Riccardelli
13. Edward Strauss

**THE PORT AUTHORITY OF NY & NJ**

JOSEPH MORRIS
CHIEF OF DEPARTMENT
PORT AUTHORITY TECHNICAL CENTER
241 ERIE STREET, ROOM 302
JERSEY CITY, NJ 07310
(201) 239-3693
E-mail: jmorris@panynj.gov

October 18, 2002

The Honorable Richard Nedelkoff
Director
United States Department of Justice
Bureau of Justice Assistance
Washington, DC 20531

Dear Director Nedelkoff:

Pursuant to P.L. 107-37 signed by the President on September 18, 2001, providing for the expedited payment of certain benefits for a public safety officer who died in connection with the terrorist attacks of September 11, 2001, as a direct and proximate result of a traumatic injury sustained in the line of duty as described in section 1201(a) of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796(a)) I am hereby certifying that the following public safety officers listed in the attached were killed in the line of duty and their deaths resulted from traumatic injuries.

Police Officer Dante Castro-Recio of my staff will coordinate with your staff for matters relating to this process. He can be reached at 201-871-2100.

Sincerely

Joseph Morris
Chief of Department

Attachment

Deceased public safety officers of The Port Authority of New York and New Jersey

1. Joseph Amatuccio
2. James Barbella
3. Edward Calderon
4. Carlos da Costa
5. Frank DeMartini
6. Kenneth Grouzalis
7. Douglas Karpiloff
8. Robert Lynch
9. Peter Negron
10. David Ortiz
11. Eugene Raggio
12. Francis Riccardelli
13. Edward Strauss

**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

JAN 2 2 2003

Joseph Morris
Chief of Department
Port Authority Technical Center
241 Erie Street, Room 302
Jersey City, NJ 07310

Dear Mr. Morris:

I am sending this letter to confirm the information that was provided during our phone conversation on January 14, 2003. As I explained in the phone conversation, the following 13 deceased Port Authority civilian staff members who worked in the Word Trade Department on September 11, 2001 are not eligible to receive benefits under the Public Safety Officers' Benefits (PSOB) Act:

- Joseph Amatuccio
- James Barbella
- Edward Calderon
- Carlos da Costa
- Frank DeMartini
- Kenneth Grouzalis
- Douglas Karpiloff
- Robert Lynch
- Peter Negron
- David Ortiz
- Eugene Raggio
- Francis Riccardelli
- Edward Strauss

At the Bureau of Justice Assistance, we understand that these staff members had property management responsibilities, including tenant liaison, building maintenance and operations, construction management, and life safety and security management. Unfortunately, such duties do not meet the criteria the PSOB Act established to define "public safety officer."

The PSOB Act clearly states (42 U.S.C. 3796b, Section 1204, Definitions):

As used in this subchapter [part]—

(8) "public safety officer" means—

(A) an individual serving a public agency in an official capacity, with or without

compensation, as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew. . . ."

For your reference, I have included a copy of the PSOB Act in its entirety.

As I explained to you and in a subsequent phone conversation with Ms. Rebecca Croneberger, these victims' families should apply to the Victim Compensation Fund, established in a new law, the Air Transportation Safety and System Stabilization Act (Public Law 107-42). This fund provides compensation to any individual who was physically injured or to the families and beneficiaries of any individual who was killed as a result of the terrorist attacks of September 11. The families can obtain a compensation form by calling 1-888-714-3385, going to www.usdoj.gov/victimcompensation, or visiting one of the victim assistance centers (call the above-mentioned number to get a list of locations).

Families that apply for this fund should understand that this is a collateral fund program. That is, any funds the victims' families qualify for from the Federal Government will be reduced based on other sources of compensation they have received, including monies collected from other government programs or life insurance plans. However, any monies they receive from privately funded charities are exempt from this provision.

Please extend our condolences to the families and colleagues of these 13 Port Authority civilian staff members. We deeply appreciate the contributions these staff members made on that tragic day; this denial of benefits is in no way meant to diminish their efforts. If my office can be of further assistance with this or any other matter, please do not hesitate to contact us at 202-307-0635 or 1-888-744-6513 or by e-mail at askpsob@ojp.usdoj.gov.

Sincerely,

Eileen M. Garry

Eileen M. Garry
Associate Deputy Director

Enclosure

cc: R. Croneberger
D. Castro-Recio

**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

JAN 2 2 2003

Joseph Morris
Chief of Department
Port Authority Technical Center
241 Erie Street, Room 302
Jersey City, NJ 07310

Dear Mr. Morris:

I am sending this letter to confirm the information that was provided during our phone conversation on January 14, 2003. As I explained in the phone conversation, the following 13 deceased Port Authority civilian staff members who worked in the Word Trade Department on September 11, 2001 are not eligible to receive benefits under the Public Safety Officers' Benefits (PSOB) Act:

- Joseph Amatuccio
- James Barbella
- Edward Calderon
- Carlos da Costa
- Frank DeMartini
- Kenneth Grouzalis
- Douglas Karpiloff
- Robert Lynch
- Peter Negron
- David Ortiz
- Eugene Raggio
- Francis Riccardelli
- Edward Strauss

At the Bureau of Justice Assistance, we understand that these staff members had property management responsibilities, including tenant liaison, building maintenance and operations, construction management, and life safety and security management. Unfortunately, such duties do not meet the criteria the PSOB Act established to define "public safety officer."

The PSOB Act clearly states (42 U.S.C. 3796b, Section 1204, Definitions):

As used in this subchapter [part]—

(8) "public safety officer" means—
(A) an individual serving a public agency in an official capacity, with or without

compensation, as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew. . . ."

For your reference, I have included a copy of the PSOB Act in its entirety.

As I explained to you and in a subsequent phone conversation with Ms. Rebecca Croneberger, these victims' families should apply to the Victim Compensation Fund, established in a new law, the Air Transportation Safety and System Stabilization Act (Public Law 107-42). This fund provides compensation to any individual who was physically injured or to the families and beneficiaries of any individual who was killed as a result of the terrorist attacks of September 11. The families can obtain a compensation form by calling 1-888-714-3385, going to www.usdoj.gov/victimcompensation, or visiting one of the victim assistance centers (call the above-mentioned number to get a list of locations).

Families that apply for this fund should understand that this is a collateral fund program. That is, any funds the victims' families qualify for from the Federal Government will be reduced based on other sources of compensation they have received, including monies collected from other government programs or life insurance plans. However, any monies they receive from privately funded charities are exempt from this provision.

Please extend our condolences to the families and colleagues of these 13 Port Authority civilian staff members. We deeply appreciate the contributions these staff members made on that tragic day; this denial of benefits is in no way meant to diminish their efforts. If my office can be of further assistance with this or any other matter, please do not hesitate to contact us at 202-307-0635 or 1-888-744-6513 or by e-mail at askpsob@ojp.usdoj.gov.

Sincerely,

Eileen M. Garry

Eileen M. Garry
Associate Deputy Director

Enclosure

cc: R. Croneberger
D. Castro-Recio

THE PORT AUTHORITY OF NY & NJ

Kenneth J. Ringler, Jr.
Executive Director

January 13, 2006

JAN 23 2006

The Honorable Domingo S. Herraiz
Director
Bureau of Justice Assistance
810 Seventh Street, N.W.
4th Floor
Washington, DC 20531

Dear Director Herraiz:

Pursuant to P.L. 107-37 signed by the President on September 18, 2001, to provide for the expedited payment of certain benefits for a public safety officer who died as a direct and proximate result of a traumatic injury sustained in the line of duty as described in section 1201(a) of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796(a)) in connection with the terrorist attacks of September 11, 2001, The Port Authority of New York and New Jersey hereby certifies, based upon a review of its official records, that the thirteen employees of the World Trade Department of the Port Authority, functioning in their capacity as rescue squad members for the World Trade Center and, therefore, qualifying as public safety officers as defined in Section 1204(8)(A) of the Act (42 U.S.C. 3796b(8)(A)), listed on the attachment were killed in the line of duty and their deaths resulted from traumatic injuries as defined in the regulations appearing at 28 CFR Part 32.

Please coordinate with Ruth Montgomery of my staff for matters relating to this process. She can be reached at (212) 435-2885.

Thank you for your assistance with this matter.

Sincerely,

Kenneth J. Ringler, Jr.
Executive Director

cc: Hope D. Janke

225 Park Avenue South, 15th Floor
New York, NY 10003
T: 212 435 7271 F: 212 435 6670

Attachment

Port Authority Certification for Public Safety Officer Benefits for Thirteen World Trade Department Responders

| | Name | Title | Social Security Number | Date of Birth |
|---|---|---|---|---|
| 1 | Joseph Amatuccio | Chief Maintenance Supervisor | 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 | 03-15-1960 |
| 2 | James Barbella | General Maintenance Supervisor | 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 | 05-23-1948 |
| 3 | Edward Calderon | Operations Group Supervisor / Property Manager 1 WTC | 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 | 07-21-1957 |
| 4 | Carlos da Costa | Assistant General Manager WTC Building Services | 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 | 04-11-1960 |
| 5 | Frank DeMartini | Manager, World Trade/Economic Development Construction | 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 | 03-31-1952 |
| 6 | Kenneth Grouzalis | Property Manager | 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 | 09-06-1945 |
| 7 | Douglas Karpiloff | Security And Life Safety Director - WTC | 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 | 07-28-1948 |
| 8 | Robert Lynch | Property Manager | 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 | 12-29-1956 |
| 9 | Peter Negron | Designer (Architectural) | 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 | 09-19-1966 |
| 10 | David Ortiz | Locksmith | 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 | 04-08-1964 |
| 11 | Eugene Raggio | General Operations Supervisor | 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 | 04-07-1946 |
| 12 | Francis Riccardelli | Program Manager, Building Systems World Trade (Manager, Vertical Transportation Systems) | 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 | 12-28-1960 |
| 13 | Edward Strauss | Chief Operations Supervisor | 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 | 08-28-1957 |

128 Penn Avenue
Staten Island, NY 10306
July 26, 2004

Eileen M. Garry
Deputy Director
U.S. Department of Justice
Office of Justice Programs
Bureau of Justice Assistance
Washington, D.C. 20531

Dear Ms. Garry:

Please be advised that this letter is to serve as notice that I elect to exercise my right to appeal the decision you furnished in your letter of June 23, 2004 regarding Case Number 2001-911-415, Eugene J. Raggio.

As it appears that the decision to deny my claim rests solely on the premise that my father was not considered a rescue worker by his employer, I am contacting my law firm of Kreindler and Kreindler, Governor Pataki's Office and my father's employer, the Port Authority of NY & NJ, to furnish you, again, with the documentation that supports his being deemed a rescue worker.

Let this letter also document the fact that in your letter of June 23rd you failed to notify me of my right to appeal and that no information regarding the appeal process was included. It is my understanding, according to the information your Department puts forth on its website, that if a claim is denied the claimant "will be provided with more information on the appeal process."

You will be hearing further regarding this matter.

Sincerely,

Melissa F. Raggio

Melissa F. Raggio

cc: Mr. William Howard
Executive Chamber, State of New York

Public Safety Officers' Benefits Act

# APPEAL

On Behalf Of

RE: EUGENE R. RAGGIO

PSOB CLAIM No.: 2001-911-421

Hearing Officer: Robert J. Gemignani

**May 12, 2005**

# DETERMINATION MEMORANDUM

## I. Introduction

In July of 2004, , on behalf of herself and her mother, exercised her right to appeal the decision by the Bureau of Justice Assistance to deny them benefits, under the Public Safety Officers' Benefits (PSOB) Act, resulting from the death of her father, Eugene Raggio. The non-disputed facts of the case are that on September 11, 2001, Eugene Raggio, a General Operations Supervisor with the New York Port Authority, died while attempting to evacuate individuals from the World Trade Center following the terrorist attacks on that day. claim was certified as ready for a determination in June 2004. The Agency determination was based on the report of Public Safety Officer's Death submitted by the law firm of Kreindler & Kreindler on behalf of the Port Authority of New York and New Jersey, the Claim for Death Benefits submitted by Kreindler & Kreindler on behalf of Mr. Raggio's spouse, , and an analysis of the evidence presented at that time. The Agency determined that the death of General Operations Supervisor Eugene R. Raggio is not covered under the Omnibus crime Control and Safe Streets Act of 1968, Title I, Part L, subpart 1, as amended, (Public Safety Officers' Benefits (PSOB) Act, 42 U.S.C. 3796, et seq.) and C.F.R. Part 32. The Agency concluded that Mr. Raggio was not a "public

safety officer" within the meaning of the PSOB Act. Accordingly, it was determined that Mr. Raggio's survivors are not eligible for the PSOB Benefits.

The case was assigned to this Administrative Hearing Officer on August 20, 2004. Several telephone conversations were held with Arlene Roe at Kreindler & Kreindler in August, September, and October 2004 to discuss the Appeal. A formal letter was mailed to Ms. Roe on October 20, 2004, outlining the Appeal process. A telephone conversation was also held on September 1, 2004 with Mr. William Howard, First Secretary to New York Governor George Pataki. Mr. Howard related the Governor's deep interest in the case. The Appeal Hearing was eventually scheduled for 10:00 A.M. on Tuesday, January 25, 2005 in the law offices of Kreindler & Kreindler, 100 Park Avenue, New York, N.Y.

## II. Focal Issue

The focal issue in this appeal is whether Eugene R. Raggio was a public safety officer within the meaning of the PSOB Act. The Bureau of Justice Assistance determined that while Mr. Raggio acted heroically in performing his duties as a General Operations Supervisor for the New York Port Authority on September 11, 2001, he was not a "public safety officer" within the meaning of the PSOB Act.

"Public safety officer" is defined in 42 U.S.C. §3796 b(8) as "an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew." "Firefighter" is defined in 42 U.S.C. §3796 b(4) as "an individual serving as an officially recognized or designated member of

a legally organized volunteer fire department and an officially recognized or designated public employee member of a rescue squad or ambulance crew."

III. **The Claimant's Evidence and Arguments**

The Appeal Hearing regarding this Claim was held in New York City, on January 25, 2005. In addition to arguments and documents incorporated into the record by claimant's Attorney, Noah H. Kushlefsky, direct testimony was received from Mr. Alan Reiss, Mr. Raggio's superior at the time of his tragic death.

Alan Reiss

Mr. Reiss is currently Director of Aviation at the Port Authority of New York and New Jersey. On September 11, 2001, however, he was Director of the World Trade Center – a position he held from 1999 until November of 2001. As such, everyone who worked at the World Trade Department reported to him. On July 24, 2001, the World Trade Center was leased to Silverstein Properties, Inc. Mr. Reiss continued in his position to train Silverstein personnel. He designated certain Port Authority employees who had extensive knowledge of the World Trade Center buildings and their operation to work as part of the transition team. Eugene Raggio was among those employees. Mr. Reiss testified that in addition to his job as General Operations Supervisor, Mr. Raggio was certified as a Fire Safety Director by the New York Fire Department, and he also served as the Life Safety and Security Supervisor. Mr. Reiss made available a copy of Chapter Seven of the World Trade Center Emergency Procedures Manual 2001. Section 7-1.2 of Chapter Seven outlines the duties of a Fire Safety Director as follows:

- Respond to the appropriate Fire Command Station, or scene, and assume the Fire Safety Director responsibilities.

- Direct overall activities as related to emergency.
- Coordinate all activities with the New York City Fire Department and other emergency response personnel.
- Direct public address announcements as required.
- Initiate evacuation of floor(s) / area(s) as necessary.
- Investigate and report on all fire alarms and actual fires.
- Deploy security officers as necessary.
- Dispatch "key runs" as appropriate.
- Insure appropriate notifications are initiated.
- Maintain a chronological record of events.
- Direct OCC to arrange for emergency elevator service.
- Investigate cause of fire, coordinate activities with FDNY Bureau of Fire Investigation.
- Prepare appropriate reports.

All Fire Safety Directors must complete six days of training over a six week period with the New York Fire Department. The training involves learning the general rules and regulations of the Fire Department and applying what they learned to the specifics of the building(s) for which they are responsible (e.g. how many stairs are there; how many elevators and freight elevators; what is the ventilation system like; etc.). Each prospective Fire Safety Director is finally given a site specific test by the Fire Department. If the individual passes the test he/she receives a certificate of fitness. Mr. Reiss testified that in times of emergency, Mr. Raggio, in his role as Life Safety and Security Supervisor, assessed the emergency situation and if immediate action was needed, he would take it. Action can include evacuating persons from part of the building, from an entire floor, or from the entire building. Mr. Reiss testified in cases of a fire emergency, Mr. Raggio as a Fire Safety Director, would be in command of the situation until the Fire Chief of his representative arrives, after which he would be obligated to support the Fire Chief. In essence, according to Mr. Reiss, the Fire Chief would become Mr. Raggio's boss. Mr. Raggio would be responsible to

support the fire Chief in every way possible. According to Mr. Reiss, on September 11, 2001 Eugene Raggio had been instructed to help with the evacuation of the World Trade Center buildings. The Fire Department had made the decision that as people were evacuating the building not to send them out via West Street because of falling debris and people jumping out of the building. According to Mr. Reiss, they were instead directed to go east through the underground shopping mall concourse at the Trade Center and out onto Church Street. Mr. Reiss testified that Mr. Raggio was there with a bull horn directing the evacuation from the building. When the second World Trade Center building was hit, Mr. Raggio was asked to accompany one of the fire chiefs to building two, where he assisted the fire department with keeping an elevator operational. Mr. Raggio was killed in Two World Trade Center. His remains were found in Mid March 2002 in the rubble on the street level where the fire command desk was located.

Noah H. Kushlefsky

Mr. Kushlefsky is the claimant's Attorney. He presented both an opening statement and final arguments to support the claimant's contention that Eugene R. Raggio was, in fact, a public safety officer within the meaning of the PSOB Act. He argues that there is nothing in the statute that says one must be a full time public safety officer. If one of the delineated job descriptions in an individual's position fits into the statute and he/she is performing that function in the line of duty when killed, then the statute should apply, argues Mr. Kushlefsky. The claimant's Attorney focused on that part of the definition describing a public

safety officer as a member of a "rescue squad." Although the term rescue squad is not defined in the Act or the Regulations, Mr. Kushlefsky assumes it means a group of people that are designated to perform a rescue operation. He points out that on the second page of Mr. Raggio's job description, he is tasked to assume safety and rescue operations in emergency situations. On September 11, 2001, Mr. Raggio became involved in the rescue operations because his job required him to do so – he had the Authority to act as a first responder to provide rescue services, and he did so heroically. Mr. Kushlefsky noted that Mr. Raggio couldn't just walk out of the building and leave. He had a job to do. Just like the firefighters could not leave and walk away – just like the police officers could not leave and walk away until relieved by a higher authority. Mr. Kushlefsky emphasized that Mr. Raggio had a responsibility to evacuate the building and help rescue people. Until relieved he was responsible and obligated to perform those public safety duties.

## IV. Findings of Fact

The undisputed facts in this case are that on September 11, 2001, Eugene R. Raggio died while attempting to evacuate individuals from the World Trade Center following the terrorist attacks on that day. The Bureau of Justice Assistance (BJA) determined that Mr. Raggio's survivors are not eligible for the PSOB death benefits because he was not a "public safety officer" within the meaning of the Act. The Claimant challenges BJA's findings by providing evidence and arguments which she contends show that Mr. Raggio was, in fact, a "public safety officer" as defined within the Act. Two specific pieces of

evidence were presented to support the claim that Mr. Raggio had "public safety officer responsibilities" as part of his job as a General Operations Supervisor at the World Trade Center. The first piece of evidence is that Mr. Raggio was trained and certified by the New York Fire Department as a Fire Safety Director. His responsibilities as Fire Safety Director are listed on pages 3 and 4 of this Determination. In assessing these responsibilities it is obvious that Mr. Raggio was not directly responsible for fighting a fire, but rather was responsible to support the fire department in other fire suppression duties. During a fire, the Fire Chief would function as Mr. Raggio's supervisor and Mr. Raggio would be obligated to support him in every way possible, such as in the use of elevators and in evacuation and rescue procedures. The second piece of evidence to support the contention that Mr. Raggio had peace officer responsibilities, was presented by the Claimant's Attorney, Noah Kushlefsky. Mr. Kushlefsky focused on that part of the definition describing a "firefighter" as an individual serving as a member of a "rescue squad." He noted that the term rescue squad is not defined in the Act or the Regulations, but assumed it means a group of people that are designated to perform rescue operations. He argues that Mr. Raggio's responsibilities included rescue operations. 28 C.F.R. 32.2 (o) of the Regulations specifically defines a rescue squad member as an "officially recognized or designated employee or member of a rescue squad...." Mr. Raggio was not an employee or member of such a squad. On the other hand, Mr. Raggio did have responsibility for rescue operations. Noted in his official job description are the words, "may assume responsibility for safety and rescue operations in

emergency situations." It is also important to note that rescue procedures are not the exclusive responsibility of a rescue squad. Rescue functions are also an integral part of a firefighter's job. For instance, in the World Trade Center Emergency Procedures Manual (7-2.2), the responsibilities of a firefighter are defined as, "respond to scene, investigate alarm, extinguish fire, perform rescue functions and other associated duties." It is noted that other than the extinguishing of a fire (the exception being a small fire), Mr. Raggio performed all of the other tasks expected of a fire fighter. He was a first responder; he investigated the fire alarm; if the fire could not be immediately extinguished, he called in the NY Fire Department; once the Fire Chief or his representative arrived, he functioned under his supervision and assumed fire rescue duties and other supportive functions. That Mr. Raggio had significant firefighting responsibilities as part of his job as a General Operations Supervisor at the World Trade Center is beyond mere conjecture. On September 11, 2001 he handled those responsibilities in a capable and heroic way. Mr. Raggio was more than a private citizen acting valiantly on the day the World Trade Center was attacked. Unlike many other employees, he had specific public safety responsibilities to fulfill in such emergencies. As noted by Attorney Kushlefsky, Mr. Raggio could not merely walk away from the attacks of September 11, 2001. Mr. Raggio was one of the first individuals to respond to the attack. Once the Fire Chief arrived, he was instructed to assist in rescue procedures and begin evacuating the building. Following the attack on the second World Trade Center building he was instructed by a fire chief to accompany him to that building and

assume rescue and evacuation procedures there. Clearly, public safety officer responsibilities during emergencies at the World Trade Center were a part of Mr. Raggio's duties as per his job description – and as evidenced by the way those responsibilities were played out on September 11, 2001.

## V. Findings of Law

As noted previously the focal issue in this case is whether, or not, Mr. Raggio was a "public safety officer" within the meaning of the Act. **Public Safety Officer** is defined in 42 U.S.C. §3796 b(4) as an individual serving a public agency in an official capacity with or without compensation, as a law enforcement officer, firefighter, rescue squad member or ambulance crew member. **Firefighter** is further defined in 42 U.S.C. §3796 b(4) to include an individual serving as an officially recognized or designated member of a legally organized volunteer fire department and an officially recognized or designated public employee member of a rescue squad or ambulance crew. The Public Safety Officers' Benefits Act is not intended to cover deaths arising from activities unrelated to law enforcement or fire fighting. The Act distinguishes between those public safety officers whose primary function is crime control or reduction, enforcement of the criminal laws, or suppression of fires, from those whose primary function lies elsewhere (see Supplementary Information and Commentary, 42 Fed. Reg. 23252, May 6, 1977). For these latter individuals (such as in the case of Eugene Raggio) where a delineated responsibility in their job description includes law enforcement or fire suppression responsibilities, the

Act will provide coverage only when they suffer a personal injury in the course of crime control or reduction, enforcement of criminal laws, or fire suppression.

Eugene Raggio was an employee of a public agency (Port Authority of New York and New Jersey) who had fire suppression responsibilities as part of his job as General Operations Supervisor at the World Trade Center. In fire emergencies he was a first responder; was responsible for assessing the situation; had authority to call in the N.Y. Fire Department if needed; and, under the supervision of the Fire Chief conducted firefighting rescue and evacuation activities. On September 11, 2001 he died in the "line of duty", while performing his responsibilities. **Line of duty** is defined in 28 C.F.R. 32.2 © as:

> (1) Any action which an officer whose primary function is crime control or reduction, enforcement of the criminal law, or suppression of fires is obligated or authorized to perform, including those social, ceremonial, or athletic functions to which the officer is assigned, or for which the officer is compensated, by the public agency he serves. For other officers, "line of duty" means any action the officer is obligated or authorized to perform in the course of controlling or reducing crime, enforcing the criminal law, or suppressing fires; and
> [Emphasis added]
>
> (2) Any action which an officially recognized or designated public employee member of a rescue squad or ambulance crew is obligated or authorized by rule, regulation, condition of employment or service, or law to perform.

This distinction in the line of duty recognizes that certain officers engage in law enforcement and fire suppression on a far more limited basis. Rather than extend coverage to the survivors of these officers for all non-law enforcement or non-fire suppression activities that they may engage in, the Regulations limit coverage only to those situations in which the individuals suffer an injury while

actually engaged in law enforcement or fire suppression activity. Mr. Raggio's position description authorized him (when necessary) to act in a fire emergency rescue and evacuation role, and under the supervision of the fire chief to render all necessary support. He was trained and certified by the N.Y. Fire Department to assume these responsibilities. Accordingly, on September 11, 2001, Mr. Raggio was engaged in fire emergency rescue activities and was acting in the "line of duty" at the time of his death.

## VI. Determination

Upon careful examination of the facts and evidence presented in this case, the Claimants are eligible for benefits under the Public Safety Officers' Benefits Act.

Dated: May 17, 2005

Robert J. Gemignani
Administrative Hearing Officer

**FINAL AGENCY DETERMINATION**
**PSOB Claim No. 01-911-0415**
**General Operations Supervisor Eugene Raggio**

On May 6, 2003, the Public Safety Officers' Benefits ("PSOB") Office received a claim for death benefits under the PSOB Act (42 U.S.C. § 3796(a)), from ("Claimant"), the spouse of General Operations Supervisor ("GPS") Eugene Raggio. As a Port Authority of New York and New Jersey ("Port Authority") employee at the World Trade Center, GPS Raggio was responsible for fire safety security staff and for supervising the Operations Control Center. GPS Raggio died tragically on September 11, 2001, during the terrorist attacks on the World Trade Center, while he was evacuating people from World Trade Center towers. On June 23, 2004, the PSOB Office determined that based on the evidence submitted in the claim, Claimant had not established that GPS Raggio was a public safety officer as required under the PSOB Act. On July 26, 2004, Claimant filed an appeal of the initial determination. On May 12, 2005, the Hearing Officer issued a decision, finding that GPS Raggio's death was covered by the PSOB Act. Pursuant to 28 C.F.R. § 32.24(h), I have elected to review the Hearing Officer's decision.

In my review, I requested more information from the Port Authority. On January 13, 2006, Kenneth J. Ringler, Jr., Executive Director of the Port Authority, certified by letter as follows:

> Pursuant to P.L. 107-37 signed by the President on September 18, 2001, to provide for the expedited payment of certain benefits for a public safety officer who died as direct and proximate result of a traumatic injury sustained in the line of duty as described in section 1201(a) of Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796(c)) in connection with the terrorist attacks of September 11, 2001, The Port Authority of New York and New Jersey hereby certifies, based upon a review of its official records, that the thirteen employees of the World Trade Department of the Port Authority, functioning in their capacity as rescue squad members for the World Trade Center and, therefore, qualifying as public safety officers as defined in Section 1204(8)(A) of the Act (42 U.S.C. 3796b(8)(A)), listed on the attachment were killed in the line of duty and their death resulted from traumatic injuries as defined in the regulations appearing at 28 CFR Part 32.

GPS Raggio was included in the list referred to in the certification. Based on my review of the record, I find nothing that leads me to question the facts certified to with regard to GPS Raggio.

**Conclusions of Law**

1. Pub. Law 107-37[1/] (September 18, 2001) provides for the payment of "benefits described

---

[1/] Pub. L. No. 107-37 was amended by § 612 of the USA PATRIOT Act (Pub. L. No. 107-56, 115 Stat. 272, 369 (2001)). Additionally, § 611 of the USA PATRIOT Act authorizes a death and disability benefit program that is all-but identical to the one created by Pub. L. No. 107-37 (as amended), except that it applies more generically "in connection with prevention, investigation, rescue or recovery efforts related to a terrorist attack."

under [the PSOB Act]" to "qualified beneficiaries" of "public safety officer[s] killed . . . in connection with . . . the terrorist attacks of September 11, 2001." Specifically, section1 of Public Law 107-37 provides that:

> upon certification (containing identification of all eligible payees of benefits pursuant to section 1201) by a public agency that a public safety officer employed by such agency was killed or suffered a catastrophic injury producing permanent and total disability as a direct and proximate result of a personal injury sustained in the line of duty as described in section 1201 of such Act, in connection with the rescue or recovery efforts related to the terrorist attacks of September 11, 2001, the Director of the Bureau of Justice Assistance shall authorized payment to qualified beneficiaries, said payment to be make not later than 30 days after receipt of such certification, benefits described under subpart 1 of part L of such Act (42 U.S.C. § 3796 *et seq.*).

2. Although it provides expressly that the death and disability benefits it authorizes are identical to the death and disability benefits described in 42 U.S.C. § 3796 (*i.e.*, the PSOB Act),[2] Public Law 107-37 is a separate and distinct benefit program from the program established by the PSOB Act; eligible claimants may receive benefits under either program, but not both.

3. The certifications specified by Pub. L. No. 107-37 constitute *prima facie* evidence of the matters certified.

**Decision**

I find that Claimant is eligible to receive the death benefits authorized by Pub. L. 107-37. Accordingly, the Hearing Officer's decision that Claimant is eligible for the death benefits authorized by the PSOB Act is rendered moot, and hereby vacated.

H. Bu... for — 3-24-06

Domingo S. Herraiz
Director

Date

[2] Among other things, Public Law 107-37 incorporates by reference the definition of the term "public safety officer." This term is defined, in 42 U.S.C. § 3796b(8)(A), as "an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, as a chaplain or as a member of a rescue squad or ambulance crew."

U.S. Department of Justice

Office of Justice Programs

*Washington, D.C. 20531*

**PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION**

**Case Number:** 01-911-0434

**Decedent:** Francis Saverio Riccardelli, The Port Authority of New York and New Jersey

**Case Summary:** On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Francis Saverio Riccardelli died of injuries sustained in the line of duty.

**Survivors:** The Port Authority of New York and New Jersey Emergency Services Officer Francis Saverio Riccardelli is survived by his spouse, ; and his children . Because , are minors, their benefits will be made payable to their mother, with instructions to use the proceeds for the use and care of the minor children and to act as custodian of their benefits. No other beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Francis Saverio Riccardelli **is covered** under Public Law 107-37. The Port Authority of New York and New Jersey ESO Francis Saverio Riccardelli died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Francis Saverio Riccardelli's spouse, will be awarded $125,000.00; and his children will each be awarded $25,000.00. The entire benefit is $250,000.00 which is the total benefit amount for a death occurring on September 11, 2001.

**PSOB Claim No. 01-911-0434** **Emergency Services Officer Francis Saverio Riccardelli**

**Prepared by:** ______________________ 6/31/2006
Benefits Specialist Date
Public Safety Officers' Benefits Office

**Approved by:** ______________________ 6/30/06
Director Date
Public Safety Officers' Benefits Office

**Concurrence by:** ______________________ 30 June 2006
Office of General Counsel Date
Office of Justice Programs

U.S. Department of Justice

Office of Justice Programs

*Washington, D.C. 20531*

**PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION**

**Case Number:** 01-911-0435

**Decedent:** Edward Thomas Strauss, The Port Authority of New York and New Jersey

**Case Summary:** On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Edward Thomas Strauss died of injuries sustained in the line of duty.

**Survivors:** The Port Authority of New York and New Jersey Emergency Services Officer Edward Thomas Strauss is survived by his spouse, [redacted] and his children [redacted] and [redacted] Because [redacted] was over 18, not a full-time student, and capable of self-support, he is not eligible for the benefit. Because [redacted] is a minor, his benefit will be made payable to his mother, [redacted] with instructions to use the proceeds for the use and care of the minor child and to act as custodian of his benefit. No other beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Edward Thomas Strauss **is covered** under Public Law 107-37. The Port Authority of New York and New Jersey ESO Edward Thomas Strauss died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Edward Thomas Strauss' spouse, [redacted] and his child [redacted] will each be awarded $125,000.00. The entire benefit is $250,000.00 which is the total benefit amount for a death occurring on September 11, 2001.

**PSOB Claim No. 01-911-0435** **Emergency Services Officer Edward Thomas Strauss**

**Prepared by:**

Benefits Specialist
Public Safety Officers' Benefits Office

6/30/2006
Date

**Approved by:**

Director
Public Safety Officers' Benefits Office

6/30/06
Date

**Concurrence by:**

Office of General Counsel
Office of Justice Programs

30 June 2006
Date

U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

# PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number:** 01-911-0424

**Decedent:** Joseph Amatuccio, The Port Authority of New York and New Jersey

**Case Summary:** On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Joseph Amatuccio died of injuries sustained in the line of duty.

**Survivors:** The Port Authority of New York and New Jersey Emergency Services Officer Joseph Amatuccio is survived by his spouse, ; and his children , and dependent grandchildren . Because were over 18 years old, not full-time students, and capable of self-support at the time of ESO Amatuccio's death, they are not eligible for the benefit. Because was not over 18 years old at the time of ESO Amatuccio's death, he is eligible. were in the legal custody of ESO Amatuccio's wife, and they were dependents of ESO Amatuccio; each qualify as a "child" of ESO Amatuccio under 42 U.S.C. § 3796b(3) and the corresponding regulations. No other eligible beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on October 18, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Joseph Amatuccio <u>is covered</u> under Public Law 107-37. The Port Authority of New York and New Jersey ESO Joseph Amatuccio died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Joseph Amatuccio's spouse, , will be awarded $125,000.00. The necessary documentation to show that were dependents of ESO Amatuccio was submitted to the PSOB Office and satisfies the requirement to be deemed children. Therefore, will be awarded $41,666.68; and will each be awarded $41,666.66 which will be made payable to , to be used for their use and benefit. The total award is $250,000.00, which is the total benefit amount for a death occurring on September 11, 2001.

**PSOB Claim No. 01-911-0424** **Emergency Services Officer Joseph Amatuccio**

**Prepared by:** ______________________ 10/18/2006
Benefits Specialist Date
Public Safety Officers' Benefits Office

**Approved by:** ______________________ 10/30/06
Director Date
Public Safety Officers' Benefits Office

**Concurrence by:** ______________________ 17 Nov. 2006
Office of General Counsel Date
Office of Justice Programs

U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

---

*Washington, D.C. 20531*

**PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION**

**Case Number:** 01-911-0425

**Decedent:** James William Barbella, The Port Authority of New York and New Jersey

**Case Summary:** On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) James William Barbella died of injuries sustained in the line of duty.

**Survivors:** The Port Authority of New York and New Jersey Emergency Services Officer James William Barbella is survived by his spouse, ; and his children . Because and were over 18 years old, not full-time students, and capable of self-support, they are not eligible for the benefit. has claimed is an adult dependent, but more information is needed to determine if she is eligible for the benefit under the definition of "child" as provided at 42 U.S.C. § 3796b(3). No other eligible beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO James William Barbella **is covered** under Public Law 107-37. The Port Authority of New York and New Jersey ESO James William Barbella died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO James William Barbella's spouse, will be awarded $125,000.00. The necessary medical documentation for was submitted to the PSOB Office and satisfies the requirement to be deemed an adult dependent child. Therefore, the remainder of the benefit in the amount of $125,000.00, will be made payable to , to be used for the use and benefit of . The total award is $250,000.00, which is the total benefit amount for a death occurring on September 11, 2001.

**PSOB Claim No. 01-911-0425** **Emergency Services Officer James William Barbella**

**Prepared by:** ______________________ 10/13/2006
Benefits Specialist
Public Safety Officers' Benefits Office
Date

**Approved by:** ______________________ 10/18/06
Director
Public Safety Officers' Benefits Office
Date

**Concurrence by:** ______________________ 10/23/06
Office of General Counsel
Office of Justice Programs
Date

U.S. Department of Justice

Office of Justice Programs

---

*Washington, D.C. 20531*

## PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number:** 01-911-0426

**Decedent:** Edward Calderon, The Port Authority of New York and New Jersey

**Case Summary:** On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Edward Calderon died of injuries sustained in the line of duty.

**Survivors:** The Port Authority of New York and New Jersey Emergency Services Officer Edward Calderon is survived by his spouse, ; and his children . Because was over 18 years old, not a full-time student, and capable of self-support, she is not eligible for the benefit. Because is over 18 years old, his benefit will be made payable to him. No other beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Edward Calderon is covered under Public Law 107-37. The Port Authority of New York and New Jersey ESO Edward Calderon died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Edward Calderon's spouse, and his child , will each be awarded $125,000.00. The total award is $250,000.00, which is the total benefit amount for a death occurring on September 11, 2001.

**PSOB Claim No. 01-911-0426** **Emergency Services Officer Edward Calderon**

**Prepared by:** Benefits Specialist, Public Safety Officers' Benefits Office — Date: 6/30/2006

**Approved by:** Director, Public Safety Officers' Benefits Office — Date: 6/30/06

**Concurrence by:** Office of General Counsel, Office of Justice Programs — Date: 30 June 2006

U.S. Department of Justice

Office of Justice Programs

*Washington, D.C. 20531*

**PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION**

**Case Number:** 01-911-0427

**Decedent:** Carlos Silverio DaCosta, The Port Authority of New York and New Jersey

**Case Summary:** On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Carlos Silverio DaCosta died of injuries sustained in the line of duty.

**Survivors:** The Port Authority of New York and New Jersey Emergency Services Officer Carlos Silverio DaCosta is survived by his spouse, ; and his children and . Because are minors, their benefits will be made payable to their mother, with instructions to use the proceeds for the use and care of the minor children and to act as custodian of their benefits. No other beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Carlos Silverio DaCosta **is covered** under Public Law 107-37. The Port Authority of New York and New Jersey ESO Carlos Silverio DaCosta died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Carlos Silverio DaCosta's spouse, , will be awarded $125,000.00; and his children, and , will each be awarded $62,500.00. The total award is $250,000.00, which is the total benefit amount for a death occurring on September 11, 2001.

**PSOB Claim No. 01-911-0427** **Emergency Services Officer Carlos Silverio DaCosta**

| | | |
|---|---|---|
| **Prepared by:** | Benefits Specialist<br>Public Safety Officers' Benefits Office | 6/30/2006<br>Date |
| **Approved by:** | Director<br>Public Safety Officers' Benefits Office | 6/30/06<br>Date |
| **Concurrence by:** | Office of General Counsel<br>Office of Justice Programs | 30 June 2006<br>Date |

U.S. Department of Justice

Office of Justice Programs

*Washington, D.C. 20531*

## PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number**: 01-911-0428

**Decedent**: Francis Albert DeMartini, The Port Authority of New York and New Jersey

**Case Summary**: On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Francis Albert DeMartini died of injuries sustained in the line of duty.

**Survivors**: The Port Authority of New York and New Jersey Emergency Services Officer Francis Albert DeMartini is survived by his spouse, [redacted]; and his children [redacted]. Because [redacted] are minors, their benefits will be made payable to their mother, [redacted], with instructions to use the proceeds for the use and care of the minor children and to act as custodian of their benefits. No other beneficiaries were identified.

**Determination**: This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Francis Albert DeMartini **is covered** under Public Law 107-37. The Port Authority of New York and New Jersey ESO Francis Albert DeMartini died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Francis Albert DeMartini's spouse, [redacted], will be awarded $125,000.00; and his children, [redacted] and [redacted], will each be awarded $62,500.00. The total award is $250,000.00 which is the total benefit amount for a death occurring on September 11, 2001.

PSOB Claim No. 01-911-0428 Emergency Services Officer Francis Albert DeMartini

Prepared by: ____________________ 6/30/2006
Benefits Specialist Date
Public Safety Officers' Benefits Office

Approved by: ____________________ 6/30/06
Director Date
Public Safety Officers' Benefits Office

Concurrence by: ____________________ 30 June 2006
Office of General Counsel Date
Office of Justice Programs

U.S. Department of Justice

Office of Justice Programs

*Washington, D.C. 20531*

## PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number:** 01-911-0429

**Decedent:** Kenneth George Grouzalis, The Port Authority of New York and New Jersey

**Case Summary:** On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Kenneth George Grouzalis died of injuries sustained in the line of duty.

**Survivors:** The Port Authority of New York and New Jersey Emergency Services Officer Kenneth George Grouzalis is survived by his spouse, ; and his child . Because was over 18 years old, not a full-time student, and capable of self-support, she is not eligible for the benefit. No other beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Kenneth George Grouzalis <u>is covered</u> under Public Law 107-37. The Port Authority of New York and New Jersey ESO Kenneth George Grouzalis died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Kenneth George Grouzalis' spouse, , will be awarded $250,000.00 which is the total benefit amount for a death occurring on September 11, 2001.

**PSOB Claim No. 01-911-0429** **Emergency Services Officer Kenneth George Grouzalis**

**Prepared by:** ______________________ 6/30/2006

Benefits Specialist
Public Safety Officers' Benefits Office

Date

**Approved by:** ______________________ 6/30/06

Director
Public Safety Officers' Benefits Office

Date

**Concurrence by:** ______________________ 30 June 2006

Office of General Counsel
Office of Justice Programs

Date

U.S. Department of Justice

Office of Justice Programs

*Washington, D.C. 20531*

## PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number:** 01-911-0430

**Decedent:** Douglas Gene Karpiloff, The Port Authority of New York and New Jersey

**Case Summary:** On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Douglas Gene Karpiloff died of injuries sustained in the line of duty.

**Survivors:** The Port Authority of New York and New Jersey Emergency Services Officer Douglas Gene Karpiloff is survived by his spouse, , and his children and . Because was over 18 years old, not a full-time student, and capable of self-support, she is not eligible for the benefit. Because was over 18 years old, and a full-time student, his benefit will be made directly to him. No other beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Douglas Gene Karpiloff <u>**is covered**</u> under Public Law 107-37. The Port Authority of New York and New Jersey ESO Douglas Gene Karpiloff died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Douglas Gene Karpiloff's spouse, and child , will each be awarded $125,000.00. The entire benefit is $250,000.00 which is the total benefit amount for a death occurring on September 11, 2001.

**PSOB Claim No. 01-911-0430** **Emergency Services Officer Douglas Gene Karpiloff**

**Prepared by:**

Benefits Specialist
Public Safety Officers' Benefits Office

6/30/2006
Date

**Approved by:**

Director
Public Safety Officers' Benefits Office

6/30/06
Date

**Concurrence by:**

Office of General Counsel
Office of Justice Programs

30 June 2006
Date

U.S. Department of Justice

Office of Justice Programs

*Washington, D.C. 20531*

## PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number**: 01-911-0431

**Decedent**: Robert Henry Lynch, The Port Authority of New York and New Jersey

**Case Summary**: On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Robert Henry Lynch died of injuries sustained in the line of duty.

**Survivors**: The Port Authority of New York and New Jersey Emergency Services Officer Robert Henry Lynch is survived by his spouse, ; and his children . Because is over 18 years old, her benefit will be made payable to her. Because is a minor, his benefit will be made payable to his mother, ; and benefits will be made payable to their mother, with instructions to use the proceeds for the use and care of the minor children and to act as custodian of their benefits. No other beneficiaries were identified.

**Determination:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Robert Henry Lynch **is covered** under Public Law 107-37. The Port Authority of New York and New Jersey ESO Robert Henry Lynch died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Robert Henry Lynch's spouse, will be awarded $125,000.00, and his children , will each be awarded $25,000.00. The entire benefit is $250,000.00 which is the total benefit amount for a death occurring on September 11, 2001.

**Prepared by:** ______________________ 6/30/2006
Benefits Specialist Date
Public Safety Officers' Benefits Office

**Approved by:** ______________________ 6/30/06
Director Date
Public Safety Officers' Benefits Office

**Concurrence by:** ______________________ 30 June 2006
Office of General Counsel Date
Office of Justice Programs

U.S. Department of Justice

Office of Justice Programs

---

*Washington, D.C. 20531*

## PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number**: 01-911-0432

**Decedent**: Pete Negron, The Port Authority of New York and New Jersey

**Case Summary**: On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) Pete Negron died of injuries sustained in the line of duty.

**Survivors**: The Port Authority of New York and New Jersey Emergency Services Officer Pete Negron is survived by his spouse, and his children Because are minors, their benefits will be made payable to their mother, with instructions to use the proceeds for the use and care of the minor children and to act as custodian of their benefits. No other beneficiaries were identified.

**Determination**: This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO Pete Negron **is covered** under Public Law 107-37. The Port Authority of New York and New Jersey ESO Pete Negron died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO Pete Negron's spouse, will be awarded $125,000.00, and his children will each be awarded $62,500.00. The entire benefit is $250,000.00 which is the total benefit amount for a death occurring on September 11, 2001.

PSOB Claim No. 01-911-0432 Emergency Services Officer Pete Negron

| | | |
|---|---|---|
| **Prepared by:** | Benefits Specialist<br>Public Safety Officers' Benefits Office | 6/30/2006<br>Date |
| **Approved by:** | Director<br>Public Safety Officers' Benefits Office | 6/30/06<br>Date |
| **Concurrence by:** | Office of General Counsel<br>Office of Justice Programs | 30 June 2006<br>Date |

U.S. Department of Justice

Office of Justice Programs

*Washington, D.C. 20531*

## PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

<u>Case Number</u>: 01-911-0433

**<u>Decedent</u>:** David Ortiz, The Port Authority of New York and New Jersey

<u>Case Summary</u>: On Tuesday, September 11, 2001, shortly before 9:00 a.m., American Airlines Flight 11 crashed into the north tower of the World Trade Center, and burst into flames. Fifteen minutes later, a second plane, United Flight 175, crashed into the south tower. The impact of both crashes caused the World Trade Centers to collapse. It is estimated that approximately four hundred emergency personnel were killed during rescue attempts. The Port Authority of New York and New Jersey Emergency Services Officer (ESO) David Ortiz died of injuries sustained in the line of duty.

<u>Survivors</u>: The Port Authority of New York and New Jersey Emergency Services Officer David Ortiz is survived by his spouse, , and his children . Because is over 18, his benefit will be made directly to him. Because . is a minor, her benefit will be made payable to her mother, , with instructions to use the proceeds for the use and care of the minor child and to act as custodian of her benefit. No other beneficiaries were identified.

**<u>Determination</u>:** This claim was certified as ready for determination on May 31, 2006. Based on the certification submitted by The Port Authority of New York and New Jersey pursuant to Public Law 107-37, the Claim for Death Benefits pursuant to September 11, 2001 Terrorist Attacks submitted by his spouse, and an analysis of the facts of this case, it is determined that the death of Port Authority of New York and New Jersey ESO David Ortiz **<u>is covered</u>** under Public Law 107-37. The Port Authority of New York and New Jersey ESO David Ortiz died as a direct and proximate result of a personal injury sustained in the line of duty.

Based on the evidence presented in this case we have concluded that The Port Authority of New York and New Jersey ESO David Ortiz's spouse, will be awarded $125,000.00; and his children, . will each be awarded $62,500.00. The entire benefit is $250,000.00 which is the total benefit amount for a death occurring on September 11, 2001.

**Prepared by:** Benefits Specialist, Public Safety Officers' Benefits Office — Date: 6/30/2006

**Approved by:** Director, Public Safety Officers' Benefits Office — Date: 6/30/06

**Concurrence by:** Office of General Counsel, Office of Justice Programs — Date: 30 June 2006