IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SEYMOUR WINUK, individually as the father of GLENN WINUK, deceased, | ) | |
| Plaintiff, | ) | No. 06-770C |
| v. | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF

Pursuant to this Court's order dated April 18, 2007, defendant, the United States, respectfully submits this supplemental brief regarding the recent precedential decision of the United States Court of Appeals for the Federal Circuit in Amber-Messick v. United States, __ F.3d __ , 2007 WL 1120391 (Fed. Cir. April 17, 2007) ("Messick").

I. The Federal Circuit's Decision In *Messick*

Messick concerned a claim filed by Ms. Amber Messick, the mother of Christopher Kangas, a 14-year-old "apprentice firefighter" in the Brookhaven, Pennsylvania Volunteer Fire Department who died in a bicycle accident. The fire department authorized 14 and 15-year-old apprentice firefighters to participate in training activities, provide first aid care at emergency scenes, engage in food service activities, support search and rescue operations, and assist with clean-up activities. Messick, 2007 WL 1120391, at *2. Christopher Kangas was killed when an automobile struck his bicycle while he was riding to the fire station in response to a fire alarm. Id.

The United States Department of Justice, Office of Justice Programs, Bureau of Justice Assistance ("BJA") determined that Christopher Kangas was not a "public safety officer" within

the meaning of the Public Safety Officers' Benefits Act (" PSOBA"), and that he did not die in the line of duty. Specifically, the BJA concluded that, in order to be a firefighter pursuant to the PSOBA, the decedent must have been authorized to actively engage in the suppression of fires. Because Christopher – an apprentice – was not so authorized, he was not a firefighter. Accordingly, the BJA found that the claimant, Mrs. Amber Messick, was not entitled to PSOB death benefits.

Ms. Amber Messick filed a complaint in this Court that challenged the BJA's denial of benefits. The Court held that the BJA's denial of benefits was arbitrary and it entered a monetary judgment in the amount of the PSOBA death benefit in favor of Ms. Amber Messick. The Court held that the BJA's interpretation of the term "firefighter," as an individual authorized to engage in the suppression of fires, was "unreasonably and impermissibly restrictive in light of the language of the PSOBA." Messick, 70 Fed. Cl. 319, 331 (2006). Instead, the Court reasoned that the phrase "includes an individual" in the PSOBA definition of "firefighter" indicated that Congress intended an expansive interpretation that included minor apprentice firefighters who were prohibited from certain firefighting activities, such as entering burning buildings, but who were "engaged in activities involved in the 'suppression of fires.'" Id. at 326, 331. The Court also held that Christopher had died in the "line of duty" in route to a fire. Id.

Upon appeal, the Federal Circuit reversed and remanded with instructions that judgment be entered in favor of the United States. The court of appeals first reaffirmed that Chevron deference applies to BJA interpretations of the PSOBA, stating that, "because Congress expressly authorized BJA to issue regulations interpreting PSOBA and to make determinations as to eligibility for benefits, we conclude that Congress intended for a BJA pronouncement to have the

'force of law.'" Messick, 2007 WL 1120391, at *5 (citing 42 U.S.C. § 3796c). Turning to the critical statutory term, the court of appeals held that the definition of "firefighter," provided in 42 U.S.C. 3796b(4), did not directly speak to whether Congress intended to include a minor, apprentice firefighter who could not actively suppress fires. See id. at *6. After reviewing the common dictionary definition of "firefighter" and the relevant legislative history, the court of appeals held that the BJA's interpretation of the term "firefighter" as one who is authorized to actively engage in the suppression of fires, was permissible and should, therefore, be accorded deference. See id. at *7. The court of appeals also held that the Pennsylvania state law that expressly prohibited minors from engaging in certain fire-related activities supported the reasonableness of the BJA's determination that Christopher Kangas was not authorized to actively engage in the suppression of fires. Id.

The Federal Circuit also considered and rejected Ms. Amber Messick's claim that the BJA's denial of PSOB benefits was inconsistent with the fact that she had received benefits from Pennsylvania pursuant to a state law. The court of appeals, reiterating its prior holding that the version of 28 C.F.R. § 32.5 applicable in that case was applicable only to the findings of fact of a state or local agency, held that the regulation did not require the BJA to give substantial weight to a state agency's legal conclusion that Ms. Amber Messick was entitled to a state death benefit. See id. (citing Demutiis v. United States, 291 F.3d 1373, 1379 (Fed. Cir. 2002)).

Judge Newman dissented. According to the dissent, the majority erred by failing to recognize the broad, remedial nature of the PSOBA and that exclusion of apprentices from the definition of "firefighter" was "inimical to the purpose" of the statute. See id. at *9-10 (Newman, J. dissenting). Specifically, the dissent noted that the BJA should have accorded

"substantial weight" to the Pennsylvania Emergency Law Enforcement Personnel Death Benefits Act, which applied to Christopher's Pennsylvania claim, regardless of his minor status. See id. Upon the question of Chevron deference, the dissent stated that the BJA's interpretation of "firefighter" "departs so markedly from the statutory purpose as to negate deference." Id. (citation omitted).

## II. The Federal Circuit's Decision In *Messick* Supports Our Argument That The Court Should Defer To The BJA's Reasonable Interpretation Of The Phrase "Serving A Public Agency In An Official Capacity" And The BJA's Reasonable Interpretation Of The Word "Certification" In Public Law 107-37

We initially note, as was noted in our prior briefs in this case, that Messick is factually distinguishable from this case (such that the losing claimant in Messick had a better argument than does Mr. Winuk) because Christopher Kangas was authorized to serve the Brookhaven fire department in an official capacity (albeit not in any capacity that could result in his being determined a "firefighter" pursuant to the PSOBA). Here, in contrast, Glenn Winuk was not authorized on September 11, 2001, to provide any services upon behalf of the Jericho Fire Department ("JFD"). AR 266, 277, 302-03. Notwithstanding these factual distinctions, the Federal Circuit's reasoning in Messick supports our argument that the BJA's determinations (1) that Glenn Winuk, an associate firefighter who was prohibited from performing any firemanic activities, including riding a fire truck or attending a fire, and who was not authorized by any JFD bylaw or any JFD official to participate in emergency medical-related activities on behalf of the JFD, was not "serving a public agency in an official capacity"; and (2) that the JFD never provided a "certification" as required by Public Law 107-37, that Glenn Winuk was a public safety officer employed by the JFD who was killed in the line of duty on September 11, 2001,

should be sustained as reasonable and permissible. This Court must defer to the BJA's reasonable interpretation of the statute where Congress has not directly spoken to the precise question at issue. See Messick, 2007 WL 1120391, at *5.

As we demonstrated in our prior briefs, the PSOBA defines a public safety officer as an individual serving a public agency in an official capacity as, among other things, a firefighter or member of an ambulance crew or rescue squad. 42 U.S.C. § 3796b(8). The statute does not, however, define "serving in an official capacity." Thus, the BJA, the agency authorized by Congress to implement the statute, has stated that, to serve a public agency in an official capacity, the decedent must be an employee or volunteer, or have some similar relationship of performing services as a part of the agency. See Chacon v. United States, 48 F.3d 508, 512 (Fed. Cir. 1995) (deferring to the agency's reasonable interpretation and citing U.S. Dep't of Justice, Legal Interpretations of the Public Safety Officers' Benefits Act 9 (1981) (citing In re Holstine, PSOB Claim No. 78-338 (Jul. 8, 1980), aff'd, Holstine v. Dep't of Justice Law Enforcement Assistance Admin., 688 F.2d 846 (9th Cir. 1982) (unpublished)).

Here, application of the Chevron analysis employed by the Federal Circuit in Messick dictates that the BJA's interpretation of "serving a public agency in an official capacity" as excluding an associate firefighter who lacked any authority to attend a fire scene or provide firemanic services is entitled to deference. Moreover, to the extent that Mr. Winuk here seeks to define Glenn Winuk as having been authorized to serve the JFD in an official capacity as a member of a rescue squad or ambulance crew, the BJA reasonably accorded substantial weight to the JFD general counsel's official opinion that an associate firefighter could not engage in any

emergency medical-related activities.[1] The BJA's eminently reasonable legal conclusion that Glenn Winuk was not a public safety officer on September 11, 2001 should be accorded deference by this Court.

Additionally, although the provisions of Public Law 107-37 are clear upon their face, to whatever extent that the Court may determine the law's requirements to be ambiguous, the Chevron analysis employed by the Federal Circuit in Messick also supports the BJA's interpretation of Public Law 107-37. Specifically, Public Law 107-37 provides expedited payment of a Federal benefit when a public agency certifies that the decedent was a public safety officer employed by the agency and killed in the line of duty in connection with the September 11, 2001 terrorist attack. 115 Stat. at 219. As we demonstrated in our moving brief, the plain meaning of "certification" requires an unequivocal statement. However, even if the Court were to look beyond the plain meaning of certification, the BJA's interpretation, being the only interpretation that makes logical sense, is certainly a permissible interpretation. The certification required by Public Law 107-37 is intended to substitute for the fact-finding normally performed by the PSOBA office during the adjudication of a non-expedited claim. If the certification equivocates in any way, the PSOBA office's reliance upon such a statement would contravene the plain terms of the law and could potentially result in the payment of claims when the public agency itself does not believe the individual to be covered by the PSOBA. Here, as we demonstrated in our response to Mr. Winuk's cross-motion, the JFD never offered an unequivocal certification. If anything (if the Court determines that it is appropriate to consider

---

[1] Notably, the record is entirely devoid of any explicit or implicit authority permitting Glenn Winuk to perform any emergency medical-related activities upon behalf of the JFD on September 11, 2001.

Mr. Winuk's extra-record appendix materials), the JFD appears to have unequivocally taken the position that Glenn Winuk was not authorized to perform any actions upon its behalf on September 11, 2001. Pl. App. 70. Accordingly, because the BJA's interpretation of "certification" is reasonable, the Court should defer to that interpretation should it find that Congress had not directly spoken to the issue.

## III. The Federal Circuit's Decision in *Messick* Supports Our Argument That The BJA Appropriately Did Not Accord Special Weight To The New York State "Winuk" Law

The Federal Circuit's decision in Messick reaffirms that the BJA need not accord any weight to legal conclusions provided by public agencies. Messick, 2007 WL 1120391 at *7. The decision supports our argument that the BJA correctly considered and did not accord "any special evidentiary weight" to the New York State law that proclaims that Glenn Winuk, "who at the time of his death, was an associate member of the Jericho volunteer fire department, shall be deemed to have been an active member of the Jericho volunteer fire department at the time of his death." AR 40, 262 (Ch. 368, Laws of New York, eff. Aug. 2, 2005). Simply put, the legal fiction enacted into law by New York State – i.e., that Glenn Winuk be deemed to have been an active member of the JFD on September 11, 2001 – is not a finding of fact and, consistent with Messick, is not owed special deference from the BJA.

## IV. This Court Should Disregard The Erroneous Analysis Of The *Messick* Dissent

In response to the Court's request that we discuss both the majority and minority opinions in Messick, we respectfully urge the Court to disregard the erroneous analysis performed by the dissent in Messick. The dissent notes, not incorrectly, that the PSOBA should be applied liberally but then relies upon that mantra to strip the BJA of any interpretive power whatsoever

— an effort which results in a confusing and unworkable patchwork of legal principles, the application of which contravenes the statute and regulations.

First, although the dissenting opinion in Messick appears first to disagree with the majority's conclusion that the statute's definition of "firefighter" is ambiguous, it then proceeds, correctly (if confusingly), to implicitly acknowledge the ambiguity by relying solely upon Supreme Court precedent applying the Chevron step two analysis. Id. at 10 (Newman, J. dissenting) (citing Whitman v. American Trucking Ass'ns, 531 U.S. 457, 485 (2001) (holding that certain statutory provisions were ambiguous but, nevertheless could not be interpreted to nullify other applicable provisions). Even assuming (as we must), that the dissent intended to acknowledge that the PSOBA is either ambiguous or does not speak to whether an apprentice without authority to engage in the suppression of fires is a firefighter, the BJA's reasonable interpretation that such an apprentice is not a firefighter does not nullify any other provision or statutory purpose. Indeed, the dissent's position reflects merely a general and unsupported disagreement with the BJA's determination and fails entirely to explain why the BJA's interpretation – that a member of a fire department who was not authorized to engage in the suppression of fires is not a firefighter – is unreasonable.

Similarly, the dissent erroneously suggests that a legal conclusion regarding entitlement to state benefits is, in fact, a finding of fact entitled to "substantial weight." Messick, 2007 WL 1120391 at * 9 (Newman, J. dissenting). Specifically, the dissent states that a Pennsylvania law regarding entitlement to Pennsylvania benefits should dictate the interpretation and application of Federal law regarding a Federal benefit. The regulation, however, does not require that the BJA accede to a state's legal conclusions. See 28 C.F.R. § 32.5. As such, here, whatever effect there

may have been on state benefits by virtue of New York State's declaration that Glenn Winuk posthumously be deemed to be an active member of the JFD, does not require BJA to accede to that declaration.

Indeed, the dissent further confuses the entire regulatory scheme by misinterpreting the BJA's role in resolving reasonable doubt. Specifically, the dissent notes that 28 C.F.R. § 32.4 requires the BJA to resolve any reasonable doubt arising from the circumstances of the officer's death in payment of the benefit. This regulation concerns the BJA's determination of whether the public safety officer died in the line of duty. See id. at *9 (citing 28 C.F.R. § 32.4). Contrary to the over broad application suggested by the dissent, the regulation concerns the circumstances of death, not whether the decedent was a "public safety officer." And, in any event, there is no doubt, reasonable or otherwise, that Glenn Winuk was prohibited from engaging in firemanic or emergency medical-related activities.

To require a benefit to be paid to an associate firefighter who was unauthorized to perform any fire-related functions would not, contrary to the dissent's suggestion, implement the remedial purpose of the statute. Rather, it would eviscerate the legislative purpose of the statute (noted by the majority in Messick), and, more importantly, would undermine the BJA's authority to interpret the statute in a reasonable manner. Accordingly, the Court should disregard the dissent's analysis.

## CONCLUSION

For these reasons, we respectfully request that the Court grant our motion for judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ Claudia Burke
CLAUDIA BURKE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tel: (202) 353-9063
Fax: (202) 514-7965

Attorneys for Defendant

Of Counsel:
RAFAEL A. MADAN
General Counsel

JASON P. COOLEY
Attorney Advisor
Office of the General Counsel
Office of Justice Programs
Department of Justice
810 7th Street, N.W.
Washington, D.C. 20531

April 25, 2007

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 25th day of April, 2007, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Claudia Burke