NO. 06-770C(MBH)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

SEYMOUR WINUK, individually as the
father of GLENN WINUK, Deceased

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF ADDRESSING MESSICK**

Dated: New York, New York
May 2, 2007

Respectfully submitted,

KREINDLER & KREINDLER LLP
ANDREW J. MALONEY III
*Attorneys for Plaintiff*
100 Park Avenue
New York, NY 10017
(212) 687-8181

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF ADDRESSING MESSICK**

Plaintiff respectfully submits this Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Judgment Upon the Administrative Record and Opposition to Defendant's Supplemental Brief in addressing the recent decision in *Messick v. U.S.*, 2007 WL 112039 (Fed. Cir. 2007).

## CERTIFICATION

We begin this opposition where this controversy began, with the BJA certification issue. The BJA spends much energy in its briefs arguing that the JFD equivocated on whether Mr. Winuk was acting as one of its members assisting the FDNY and was killed in the line of duty. The purported equivocation is critical to the BJA, because without it, the BJA *itself* claims it had no discretion whatsoever, to deny PSOBA benefits to Mr. Winuk.

Indeed, the BJA relies heavily on the purported equivocation because it wants to avoid scrutiny over the 3 retired FDNY firefighters and 13 Port Authority building "rescue workers" it awarded PSOBA benefits to. The BJA knows full well that its decisions in those sixteen 9/11 cases are wholly inconsistent with its decision in Winuk. So instead, the BJA had to find a way to attempt to distinguish those decisions.

The best the BJA could come up with was to admit it made a mistake, arguably 16 times, but that it was permitted to make the mistake or grant the benefits, because it received a magically worded certification from the appropriate public agency.[1]

As plaintiff has previously stated, there was no equivocation on how the JFD considered

---

[1] It is still unclear, what, if any, public agency certified the additional private ambulance crews who had its employees also receive PSOBA awards.

Mr. Winuk - he was one of its members who was killed while trying to save others. This position has been clear and consistent and was expressed before the "Winuk law" was passed. The April 7, 2005 Biancarello letter was nearly identical to certification letters that the BJA has relied on. AR 234. Instead, the BJA investigated and probed certain members of the JFD and its counsel about its by-laws long after the Winuk law was passed. Opinions were provided - not facts, but they were done so without investigation or discussion in the backdrop of knowing the Winuk law had recently been passed, making the BJA query academic and moot.

No one disputes the fact that Mr. Winuk was previously an active firefighter and EMS rescue worker at some point prior to 9/11. Mr. Winuk voluntarily changed his status from active member to associate member, and gave up certain rights, duties and obligations, to be sure. *Which* rights, duties and obligations were voluntarily abdicated are at the epicenter of this claim.

Mr. Winuk clearly gave up his right to fight a structure fire or ride on the fire trucks. Consequently, he would not need to continue his yearly firefighting training and physicals. These particular changes are set forth in the by-laws. What is not in the by-laws, is any prohibition in Mr. Winuk's ability to continue to act as a rescue worker providing EMS first aid to victims as he had previously been acting for so many years. Mr. Winuk could and did (as many do) respond to emergencies in his own vehicle (blue lights are often provided for volunteers to report to a scene in their personal vehicle) or on foot or some other manner, particularly when providing mutual aid out of his district.[2]

The BJA does not dispute that Mr. Winuk was, at least at one time, authorized to act in

[2] Putting his status aside for the moment, even the BJA cannot reasonably argue Mr. Winuk could only provide mutual aid by responding on a JFD fire truck instead of arriving on foot from 2 blocks away from the World Trade Center (WTC).

the manner that he did on September 11. Had he not changed his status from active member to associate member,[3] there would be very little to dispute here.

Since Mr. Winuk previously once had the right to act as a rescue worker for almost 19 years, the BJA must show that it was taken away or lost by Mr. Winuk by September 11, 2001 and give any benefit of the doubt to Mr. Winuk, pursuant to its own mandate. Messick, *9, *dissenting opinion,* citing *See* C.F.R. § 32.4 ("[the BJA] shall resolve any reasonable doubt arising from the circumstances of the officer's death . . . in favor or the payment of the death . .. benefit"); *Davis v. United States*, 46 Fed.Cl. 421, 427 (2000). Also citing *Demutiis v. United States*, 48 Fed.Cl. 81 (2000) (the PSOBA must be construed in accord with its legislative intent and applicable canons of construction "both of which compel a conclusion that Congress desired this statute to be applied liberally"), *aff'd as modified,* 291 F.3d 1373 (Fed.Cir.2002). Mr. Winuk however, not only retained this authority under the by-laws, but he kept attending periodic training in first aid including his CPR and first aid training courses to stay current under state law and supplement his already extensive background, knowledge, training and experience as an EMT rescue worker.

The BJA has never defined "rescue worker," but clearly it defines the term broadly in order to award Port Authority building supervisors, janitors, architects, and other WTC building personnel as "rescue workers", even if they had no training in first aid.

If this Court finds that the JFD certified that Mr. Winuk was acting as a member of the

[3] The BJA implies that even if Winuk was an active firefighter, he could not act as a first aid rescue worker because his EMT licensing expired in the late 1980s. This is ridiculous and non-sensical, as the majority of all firefighters who are trained in first aid would therefore not be able to provide that first aid unless he or she held a higher level of certification such as an EMT nor act as rescue workers. Pool life guards with CPR only training can be considered rescue workers.

JFD and killed in the line of duty, then the BJA by its own admission, would not have the power to investigate or challenge and would be compelled to award PSOBA benefits.

The decision by the BJA to label the JFD's written communication "not a certification" because it is "ambiguous," is unreasonable, arbitrary and capricious in light of its admission that there are no magic words that are required and its acceptance of almost identical documents, with almost identical wording from the FDNY and Port Authority.[4] In fact, Hearing Officer Skolar determined that the letter from the Jericho Fire Department, dated April 7, 2005 was indeed a certification. ("It should be noted that at the appeal hearing, **such a certification was submitted** [letter from JFD dated April 7, 2005] but with this claim then in appeal posture, that documentation would seem too late to meet Patriot Act application and procedural [30 day] processing requirements.") *Id.*

The BJA misleads the Court on Mr. Skolar's holding on certification because it cannot afford this Court to hold that the April 2005 JFD letter to be a "certification" without jeopardizing its entire defense.

## MESSICK CASE

While the Court of Appeals granted *Chevron* deference to the BJA in *Messick v. U.S.*, 2007 WL 112039 (Fed. Cir. 2007) and held that the BJA's definition of "firefighter" was not unreasonable, this poorly drafted and short sighted opinion is not dispositive in the Winuk case.[5]

The *Messick* Court (as did the BJA) repeatedly cited Pennsylvania State Law which

---

[4] Hearing Examiner Skoler did not fully address the more recent April 2005 certification sent directly to him, rather he addressed the two previous letters from JFD and held he was therefore not bound by the 30 day rule of Public Law 107-37. (Cite AR 11 fn. 4).

[5] Plaintiff's counsel in *Messick* advised that he has petitioned for rehearing en banc panel.

barred the 14 year old apprentice firefighter from fighting a structure fire. By mandate, it directed the BJA to look to local state law to assist in interpreting terms that it claimed were ambiguous. Looking to state law is not only reasonable, but required.

Here, the BJA did not have to go very far in reviewing state law to find a statute directly on point. This is so because the "Winuk law" was specifically passed to put to rest the contorted and unreasonable status claims being made by the BJA. The BJA was not free to ignore this local state law. Legislation like this does not occur often, so the BJA's insecurity on losing its *Chevron* power is vastly overstated. *Messick* requires deference to local law.

Federal courts routinely look to state law to interpret and apply various definitions and substantive rights, even when the right is created by federal statute. E.g. *West v. Aetna Life Ins. Co.*, 171 F.Supp.2d 856 (N.D.Iowa 2001)(in effort to define "accident", court held in ERISA case that courts may look to state law for guidance with definitions ); *Mohamed v. Kerr*, 53 F.3d 911 (8th Cir.1995)(federal courts may look to state law for guidance as long as state law does not conflict with the federal statute) ; *Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077 (Mass. 1990)(court looked to state law to help define "accidental" in an injury case). The BJA does not seem to mind if the legislation is federal, as in the case of Chaplain Mikal Judge, only when it is a state law that it does not like.

The *Messick* dissent correctly disagrees with the majority because the clear Congressional intent of the statue was to be applied broadly and liberally and favors granting awards by giving claimants the benefit of the doubt on all the circumstances of the death - which include the employee's status as an employee and his authority to act.

To put it more simply, the BJA gets discretion, but is not entitled to abuse its discretion.

Adding the requirement that the term "firefighter" has to include the legal authorization to engage in firefighting still begs the question: does the "firefighter" have to be the person who puts water on the fire and extinguishes the fire? Is the active adult pump operator, chauffeur/driver, or ladder operator at the scene of a fire considered a firefighter if he is not trained or not current as a structure firefighter authorized to enter a burning building? Many "firefighters" fall into this category. The *Messick* Court was short sighted in not applying a more reasonable and flexible definition and relied too heavily on *Chevron* and the Pennsylvania law in its failure to recognize many of the important contributions that were made by Christopher Kangas to the fire department - as an apprentice.

Perhaps the Court believed that because Mr. Kangas had not yet attained the requisite training to be of true help, that he was not yet a real firefighter. No so with Mr. Winuk. He had served for close to 20 years and had a tremendous amount of training and experience as a firefighter, rescue worker and at one time, a member of an ambulance crew.[6]

Perhaps the *Messick* majority was troubled by what the BJA argued was contributory negligence when Mr. Kangas was killed while rushing to the fire house on his bicycle with no helmet and running a red light. It did not reach this determination, but mentioned it more than once in ruling that the BJA's position was not unreasonable.

But Mr. Winuk was not killed commuting to the fire house or fire scene. Nothing in his conduct suggests that he was reckless or negligent, to the contrary, his conduct was heroic and

[6] Plaintiff does not argue that Mr. Winuk was part of an ambulance crew on 9/11. This would require a higher EMT certification that Winuk once had. This may also be the source of JFD attorney Frank's confusion, and that of the BJA's, in not making the distinction between "ambulance crew" which rides on JFD apparatus, and a rescue worker providing first aid and evacuation.

worthy of recognition. No one would have predicted the collapse of the buildings that morning.

While the *Messick* decision is shortsighted, it is not dispositive here. Plaintiff has never denied that the BJA is authorized to exercise its discretion in implementing the provisions of the PSOBA. The *Messick* case confirms the long line of judicial review that the BJA's analysis, which includes interpreting ambiguous terms in the statute, must be reasonable.

Reasonableness is an objective standard - not subjective. The BJA cannot impose subjective views that are inconsistent with the normal and widely accepted definitions for common terms like "rescue worker," or "first aid." Equally important is that the BJA apply its analysis and interpretation of various terms - fairly and consistently, not arbitrarily and capriciously, as it has done in the Winuk case when compared to the results in the FDNY and Port Authority "rescue worker" cases.

**<u>OPINIONS</u>**

Had attorney Frank said he believed the by-laws allowed Mr. Winuk to act as a rescue worker, the BJA would have cast his statement aside as mere "opinion" for which it affords little weight. Attorney Frank did not believe his personal opinion mattered or warranted serious investigation because of the then published Winuk law put the debate to rest. Attorney Frank went so far as to say, "As we discussed . . . New York State passed special legislation declaring Mr. Winuk . . . to have been an active member of the [JFD] as of September 11, 2001, and that action may make he answers to your questions purely academic and not applicable to this case . . .". AR 302.

The *Messick* Court held that the BJA's definition of firefighter was not unreasonable, but, in a distinction from Winuk, held that the BJA could rely on the Pennsylvania law that barred a **minor** from fighting fires - it did not specifically bar "apprentice" firefighters. Therefore it does not appear that the Pennsylvania law would have barred an adult who may have held the title "apprentice" or "probationary" firefighter or some other internal classification.

Indeed, as Judge Newman's dissent points out, "various federal laws with firefighter provisions . . . [are] explicit that a 'firefighter' can be an administrator or supervisor who is not 'actively engaged in the suppression of fires'." *Citing* 5 U.S.C. § 8331(21). *Messick* at 10.

In Winuk, the BJA has cited no New York law[7] that barred an associate firefighter or rescue worker from engaging in first aid rescue work. In fact, there is New York law that specifically authorized Winuk.

Instead, the BJA is left using the *silent* by-laws, coupled with attorney Frank's personal legal opinion interpreting those by-laws. Attorney Frank and others cited their belief that it was custom practice that an associate member did little or nothing. He cited no law or by-law provision that barred an associate member from providing first aid and rescue work. This is a critical difference from the *Messick* decision where a state law barred a minor's ability to act.

**BJA REQUEST FOR REMAND**

The BJA was in possession of all relevant 9/11 cases where status was challenged. These were repeatedly requested by counsel over the course of 18 months. The Port Authority awards were granted after 5 years in 2006 and only a couple of months before the BJA issued its final

[7] The one notable but strained exception was the Workers' Compensation Law the BJA cited in attacking mutual aid authority.

determination in Winuk in September 2006. The BJA kept those decisions secret. It is difficult to accept that the BJA could believe that the PA cases were irrelevant to the Winuk case where the same people were deciding at the same time the events concerning 9/11, where their status as rescue workers was at issue.

To date, it does not appear that the BJA or the Courts have a definition of "rescue worker." Accordingly, the BJA requests a remand to evaluate this "new" argument. While plaintiff prefers judgment in its favor, as we do not view it as an ambiguous term nor a "new" argument, in the alternative, plaintiff does not object to the remand to have th BJA review it.

**CONCLUSION**

For the reasons stated above and in plaintiff's opposition and cross-motion for judgment upon the administrative record, plaintiff respectfully requests that the BJA's motion be denied and plaintiff's motion for judgment be granted, conferring PSOBA benefits to decedent's father, Seymour Winuk. In the alternative, remand the case back to the BJA for further findings.

Dated: New York, New York
May 2, 2007

Respectfully submitted,

By: ______________________

Andrew J. Maloney III
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10017
212-687-8181
*Attorneys for Seymour Winuk,*
*as Plaintiff and Administrator to the Estate*
*of Glenn Winuk, Deceased*

To: Claudia Burke
Counsel for Defendant

203135
v1